# The Travelers Insurance Machine Co. v. The Travelers Insurance Co. of Hartford, Connecticut.

### (Decided February 14, 1911.)

## Appeal from Jefferson Circuit Court
## (Chancery Branch, Second Division).

1. Insurance Companies—Action to Enjoin Use of Name—Dissimilar Business.—In an action by the Travelers' Insurance Co. to enjoin the Traveler's Insurance Machine Co. from using the word "Travelers" in connection with the word "Insurance' as a part of its name. Held, that the business of the two companies is as dissimilar as it could possibly be.

2. Same—Term "Travelers Insurance" Generic Term—No One Allowed Exclusive Use.—As the text writers, the early history of appellee company, and our own statutes recognize a line of insurance known as travelers insurance, the term "travelers insurance" is a generic term, and no one has a right to the exclusive use of it or may complain of its use by another, so long as that use is not made to operate to the detriment of its competitor.

3. Same—Appellant's business being the manufacture of machines to be used by the Daily Accident Insurance Company, or some other company distinct from the Travelers Insurance Company, the latter has no just cause of complaint, and the injunction should have been denied.

D. R. CASTLEMAN, W. B. THOMAS and PRYOR & CASTLEMAN for appellant.

TRABUE, DOOLAN & COX and WM. BROSMITH for appellees.

OPINION OF THE COURT BY JUDGE LASSING.—Reversing.

The Travelers Insurance Machine Company was organized to manufacture automatic machines for the sale and delivery of policies of accident insurance. It is proposed by this company to rent its machines upon a royalty to an accident insurance company which its promoters have in process of organization. The accident insurance company is to be known as "The Daily Accident Insurance Company." The Travelers Insurance Machine Company had been for some time advertising its business and the business of The Daily Accident Insurance Company, when "The Travelers Insurance Company of Hartford, Connecticut," sought to enjoin the Travelers Insurance Machine Company from using the name "Travelers Insurance" or the word "Travelers" in connection with the word "Insurance" as a part of its name, or as a part of the name of any company con-

nected with it. The machine company defended upon the ground that the name "Travelers Insurance"represented a distinct branch of insurance, and that the term "Travelers Insurance" is a descriptive or generic term, and that no one can acquire an exclusive use of the words as a trade name. The plaintiff proceeded upon the theory that the term "Travelers Insurance" was not a generic term, but a trade name which it had adopted as early as 1863, and that by reason of its long use it had become its exclusive property.

The chancellor, upon the pleadings and proof offered, was of opinion that the plaintiff was entitled to the relief sought, and granted the injunction. The machine company appeals.

It is not contended by appellee that its right to the use of the name "Travelers Insurance" is protected as a trade-name or trade-mark, as these terms are usually understood, but that the use of the term "Travelers Insurance" in connection with and as a part of its name by appellant is calculated to injure it in its business by bringing it into unfair competition with appellant. That by long use it has built up a great, if not the greatest, accident insurance business in the world, and that, from the similarity in names, the casual observer would at once conclude that the business of appellant was in some way connected with, or the outgrowth of the business of appellee.

If the similarity in names is in fact such as to produce this result, then, by the weight of authority, appellee's contention is sound. For, as stated in A. & E. Encyclopedia of Law, 2d Ed., page 350:

"The tendency of the decisions now is to make every case turn upon the question whether or not the effect of what was done is to pass off the goods of one person for those of another, regardless of the existence of any technical trade-mark. In other words, the existence of a property right in the reputation and good will of one's business is recognized and protected against invasion regardless of the particular means of invasion employed."

Appellee does not dispute the correctness of this position, but insists that the facts in this case do not bring it within the purview of such a rule. Appellee is engaged in selling accident insurance, appellant in the manufacture of automatic machines to sell insurance; so that their business is as dissimilar as it could possibly be.

But appellee insists that, from the similarity in the name of the machine company with its name, the public will be deceived into believing that the insurance company operating these machines is in some way connected with The Travelers Insurance Company, and in this lies the mischief. No mark or name suggestive of appellee company or its business appears upon the machine, and the tickets calling for the insurance show that it is "The Daily Accident Insurance Company" that is issuing them and assuming the risk. Hence, neither the machines nor the tickets that are sold and distributed automatically by it can in the slightest degree tend to produce the impression which appellee seeks to guard against.

This being so, the only chance possible for the public to be deceived or misled is through the medium of the advertising matter circulated by appellant. It is pointed out by appellee as significant, that in its advertisements, laudatory of its business and the enormous profits to be realized out of the accident insurance business by its stockholders, the appellant company cited many accident companies whose stocks were worth many times their par value, but failed to make any mention at all of appellee. It is questionable whether its failure to mention appellee in its advertising matter is for or against appellee's contention. If it had cited appellee's company as an evidence of the value of accident insurance company stock as an investment, appellee might have complained that this was calling attention to it in connection with the appellant company, and made it another basis of its ground of complaint. We attach no importance, however, to this fact.

Four different samples of booklets or pamphlets advertising appellant's business are filed with the pleadings. The first may properly be styled a prospectus, in which the names of the directors, officers and agents of the appellant company are given, together with a general outline of the business which it proposes to do and the manner in which it is to be done. The second and third explain more in detail appellant's business and that of the insurance company which it is proposing to organize. They also contain pictures of the policies that will be issued and the machines that will be manufactured and used. The following are sample pictures of the machine and policy taken from one of the exhibits:

The fourth pamphlet exhibit deals primarily with the business of "The Daily Accident Insurance Company," and is aimed to assist the company in the sale of its stock. Business showing the wonderful profit realized from coin-vending machines in use in various parts of the country, it shows the great increase in value of the stock in four different accident insurance companies, whose business is set out in duplicate form. We have carefully read this literature, and are of opinion that, instead of producing or leaving the impression that appellant's business is in some, or any, way connected with that of appellee, just the reverse is true. It shows that this is a brand new venture in the insurance world; in an entirely new and novel way; with a company that is being organized for the express purpose; the machine, as the "silent salesman," is to compete with the shrewd, up-to-date insurance agent in all public places in the country. And while, according to its literature, it will expect to sell its policies in the main to travelers, it will sell to any and all who want to buy. In all of this literature, it is made plain that these policies are to be issued by The Daily Accident Insurance Company. There is nothing in the literature of which appellee may rightfully complain.

So long as appellant does nothing which is calculated to mislead or deceive the public into believing that its business is in some way connected with appellee's business, no ground of complaint is afforded appellee, unless it is entitled to the exclusive use of the words. "Travelers Insurance," and the very fact that they have been selected by appellant company as a part of its name entitles appellee to the relief sought.

There is a sharp conflict in the evidence as to whether or not "travelers insurance" is a distinct class of insurance. Men of experience in the insurance world are divided upon this question. Some of the witnesses qualified to speak say that there is a distinct class of insurance known as travelers insurance; while others hold a contrary view. The history of appellee, as disclosed by the record, shows that, as originally organized, its business was primarily to compete with two other companies engaged in placing insurance upon the lives of travelers. In its early life this was its chief, if not its only line of insurance. It did not, however, long confine itself to this exclusive line of business, but branched out into the

broader field of accident insurance, and for many years past, it has been engaged in doing a general accident insurance business. The fact still remains, however, that although it does accident business of almost every character, there has been brought over into all of its insurance contracts a clause for the special benefit of travelers upon the conveyance of common carriers. Not only are special rates made to travelers, but the policies provide that in case of accident while traveling on a public carrier the indemnity is much greater than for accidents occurring elsewhere. So it would seem that the weight of the argument is in favor of the contention of those witnesses who assert that travelers insurance is a class of insurance by itself. Although most of the companies, and, in fact, all of them, so far as we are advised, write a general line of insurance, they also include in this general insurance a special clause in favor of travelers.

In Joyce on Insurance, sec. 8, in dealing with the origin of accident insurance, we find the following:

"We have already noted under preceding sections cattle insurance, and that form of casualty insurance known as insuring the liberty of persons, but insurance which relates to the loss of life or limb, or other personal injury by accident, is of modern origin. Accident insurance, in its original form, seems to have comprehended railway accidents only, for which purpose a company was established in London in 1849, known as the Railway Passengers' Assurance Company, but in 1856 it extended its plans to embrace accidents of all kinds, and the first American company was said by a writer in 1873 to have been then only ten years old."

Niblack on Benefit Societies and Accident Insurance, sec. 363, in speaking of the English system of accident insurance in comparison with the American, says:

"Some policies cover all classes of accidents, while others are limited to those of a specified nature, as for instance, accidents while traveling by public conveyance."

A company which made a specialty of insuring travelers against accident had as well be called a travelers insurance company, as a life insurance company which made a specialty of insuring bankers is called the Bankers' Life Association or Insurance Company, or an insurance company which makes a specialty of insuring ships is called a Marine Insurance Company. The fact

that companies which make a specialty of one line of business go beyond that line and accept other risks does not make them any the less carriers or insurers of the risks of which they make a specialty; and if that specialty is the insuring of the traveling public, we see no reason why the term "travelers insurance" may not properly be said to apply to that class of the insurance business. Our statutes recognize that there are various kinds of insurance that may be written or entered into, as insurance upon the health of persons, or against injury, disablement, or death, or injuries resulting from travel, or general accidents, by land or water. Insurance against injury resulting from travel, it seems, might properly be deemed travelers insurance, just as insurance against disease might properly be termed a health policy.

Inasmuch as the text-writers, the early history of the appellee company, and our own statutes recognize a line of insurance known as travelers insurance, we hold that the term "travelers insurance" is a generic term, and that no one has a right to the exclusive use of it, or may complain of its use by another, so long as that use is not made to operate to the detriment of its competitor. When appellee adopted the name "Travelers Insurance Company," it must have had the idea that this was a generic term, for its title is "The Travelers Insurance Company of Hartford, Connecticut." If it did not recognize travelers insurance as a distinct branch or class of business in the insurance world, the necessity for the addition of the words "of Hartford, Connecticut" is wanting, for its title, "Travelers Insurance Company," without the use of these words, would have been amply protected if the word "travelers," as used, was not a generic term. While the addition of the words "of Hartford, Connecticut" to the words "Travelers Insurance Company" is not by any means conclusive that the appellee company at that time regarded travelers insurance as a distinct branch of the insurance business, still it lends some color to the claim that it was so regarded.

The conclusion which we have reached is in accord with the opinion of this court in Industrial Mutual Deposit Co. v. Central Mutual Deposit Co., 112 Ky., 937, in which a question in many respects similar to that under consideration was before the court. There both corporations were doing business in the city of Lexington.

They were engaged in the same business. One had been in business but a short time when the other commenced. The older company sought to enjoin the new organization from using the words "mutual deposit" as a part of its name. It was charged in the petition that the defendant company was organized for the purpose of depriving the plaintiff of customers, clientage and business. The application for an injunction was denied, and upon review this court, in affirming the decision of the lower court, said:

"The words which are identical in the names in controversy are "Mutual Deposit." But these words designate the business followed by the company and are generic terms descriptive of that business * * * and as the name is descriptive of the business, neither can appropriate it exclusively."

In that case the opinion in the case of Goodyear's India Rubber Glove Mnfg. Co. v. Goodyear Rubber Co., 128 U. S., 598, was cited with approval. It was there held, that names which are descriptive of a class of goods can not be exclusively appropriated by anyone.

The Supreme Court of New York, in the case of Employers' Liability Assurance Corporation v. Employers' Liability Insurance Co., 61 Hun., 552, in reviewing the case upon appeal from the judgment of the lower court refusing to grant the injunction, said:

"We are of the opinion that the court below was correct in refusing a general injunction against the defendent in this action prohibiting it from the use of the term "Employers' Liability" upon the ground that this term is a descriptive term, used generally to designate a certain well known branch of the insurance business. But it is claimed that wholly irrespective of any question of exclusive property in the name, the plaintiff was entitled to protection against any such appropriation as would interfere with its business, or induce the public to suppose that a new company trading under the same name was the original plaintiff corporation; that it was not necessary that fraud or evil practice should be shown if the fact is made to appear that the use of a trade-mark or corporate name lawfully possessed or enjoyed by a trading company is so used by a competitor as to deceive or mislead dealers to the prejudice of the corporation lawfully using the name, equity will protect by injunction. And our attention is called to certain

cases, among which are McLean v. Fleming, 96 U. S., 245, and Goodyear Company v. Goodyear Rubber Company, 128 U. S., 598. But we think that an examination of those cases is fatal to this claim. The rule is there expressly recognized that exclusive right to use a term descriptive of the character of business can not be acquired and the evidence in this case shows that the terms "Employers' Liability" are in common use in respect to this class of insurance."

"Employers' Liability" is insurance taken out by an employer to protect him against loss on account of injury to his employes while engaged in his service. It is recognized as a distinct class of the accident insurance business, and yet it is common knowledge that most accident insurance companies carry a line of employers' liability, just as most accident insurance companies make a specialty of travelers' insurance.

In Koehler v. Sanders, 9 L. R. A., 577, the New York Court of Appeals held that the word "international" in connection with the banking business could not be appropriated by any individual, corporation or firm to its exclusive use, saying:

"The word 'international' is a generic term, pertaining to relations between nations, and when applied to business or to transactions of private character it imports dealings of some sort in matters or with people of different nations, or which have some relation to them. It is in common use, and in its nature it is descriptive, and ordinarily characterizes the business to which it pertains, rather than its origin or proprietorship; and, so treated, the use of it cannot be exclusively appropriated by any party."

The decisions draw no distinction between the use of generic terms and that of surnames as trade-names or corporate names, and in the recent case of Howe Scale Co. v. Wyckoff, Seamans & Benedict, 198 U. S., 118, all the authorities in this country and England were reviewed in an elaborate opinion by Mr. Chief Justice Fuller. In that case it was sought to enjoin the defendant Remington from the use of his name as a part of the trade-name in the manufacture of type-writing machines. In denying the application, the court said:

"Remington and Sholes were interested in the old company, and Remington continued as general manager of the new company. Neither of them was paid for the

use of his name, and neither of them had parted with the right to that use. Having the right to that use, courts will not interfere where the only confusion, if any, results from a similarity of the names and not from the manner of the use. The essence of the wrong in unfair competition consists in the sale of the goods of one manufacturer or vendor for those of another, and if defendant so conducts its business as not to palm off its goods as those of complainant, the action fails.''

And in reversing the decree of the lower courts and holding that the injunction should not have been granted, the opinion concludes:

''We hold that, in the absence of contract, fraud or estoppel, any man may use his own name, in all legitimate ways, and as the whole or a part of a corporate name. And, in our view, defendant's name and trademark were not intended or likely to deceive, and there was nothing of substance shown in defendant's conduct in their use constituting unfair competition, or calling for the imposition or restrictions lest actionable injury might result, as may confessedly be done in a proper case.''

From the foregoing it is clear that no one will be prevented from the use of any generic term in connection with the conduct of his business as a trade-name, or part of a corporate or firm name, so long as said use is confined to a fair and legitimate purpose. It is only when the use of such term, in connection with or as a part of a trade-name, is calculated to bring about an unfair competition in business, that a court will enjoin its use. It is not enough that the use of such generic term may possibly produce confusion or result in bringing about unfair competition, but, to warrant the court's inference, it must reasonably appear that such will be the result.

The appellant, The Travelers Insurance Machine Co., and the appellee, The Travelers Insurance Company of Hartford, Connecticut, are so unlike in name that it is not probable that confusion will arise; and their business is so dissimilar that no confusion can possibly arise in the conduct of their respective businesses. So long, then, as the advertisements of the machine company make it clear that its business is the manufacture of machines, and that these machines, when so manufactured, are to be used by The Daily Accident Insurance Company, or some other company distinct from the ap-

pellee company, no just cause of complaint is afforded appellee.

The judgment of the lower court is reversed, and cause remanded, with instructions to enter a judgment denying the application for the injunction and dismissing the petition.

Whole court sitting.