CASE 81—INJUNCTION—OCTOBER 28.

# Old Times Distillery Co. v. Casey & Swasey.

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

INJUNCTION—INFRINGEMENT OF TRADE MARK—LACHES.—Where plaintiff and defendant have both used the same trade mark for ten years and the defendant with expense and labor has built up a trade for its goods with the plaintiff's knowledge, the latter will be denied an injunction to protect his alleged ownership of the trade mark, without regard to the rightful ownership of same.

CHARLES H. GIBSON, FOR APPELLANTS. (GIBSON & MARSHALL OF COUNSEL.)

1. The appellant's predecessors adopted the brand "Kentucky Comfort" for their whisky before it was appropriated by the appellees. Actually branding the barrels was unnecessary. Browne on Trade Marks, sec. 52.

2. Plaintiff's laches has defeated their right to an injunction. Prince Metallic Paint Co. v. Prince Mfg. Co., 57 Fed. Rep., 938; Levy v. Waitt, 61 Fed. Rep., 1008; Amoskeag Mfg. Co. v. Garner, 55 Barb., 151; Isaacson v. Thompson, 41 L. J. Ch., 101; Pomeroy, Eq. Jur., sec. 817; Menendez v. Holt, 128 U. S., 514.

WILLIAM LINDSAY, NEWTON G. ROGERS AND SAMUEL J. BOLDRICK FOR APPELLEES.

1. There was no actual appropriation by the defendant of the trade mark "Kentucky Comfort," until after plaintiff had acquired title in same. Candee v. Deeree, 10 Am. Law Reg., N. S., p. 694; Browne on Trade Marks (2d ed.), p. 307; secs. 301, 52; Cox on Trade Marks, case 301, Rowley v. Houghton.

2. Laches constituted no bar to plaintiff's recovery. McLean v. Fleming, 96 U. S., 245 to 258; Menendez v. Holt, 128 U. S., 514 to 525.

SAM. J. BOLDRICK IN A PETITION FOR EXTENSION AND MODIFICATION OF THE OPINION.

Additional citation: Fish Bros.' Wagon Co. v. Fish Bros.' Mfg. Co., 87 Fed. Rep., 203.

Old Times Distillery Co. v. Casey & Swasey.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

The right of the appellees to the exclusive use of the words "Kentucky Comfort," as a brand and trade-mark for their whiskies, is the question presented on this appeal. It appears that on March 26, 1883, the appellees, who were wholesale whisky dealers at Ft. Worth, Tex., procured, through the distillery concern of the Boldrick-Callaghan Company of Calvary, Ky., the design and brand in dispute, and the same was on that day branded into fifty barrels of whisky sold to appellees by the distilling company, and which were shipped to Ft. Worth, and received by appellees on April 10, 1883. Thereafter appellees pushed this brand of whisky, using as their trade-mark the words "Kentucky Comfort" in connection with the words "Casey & Swasey, Sole Proprietors." Yearly since then the Kentucky Company has continued to furnish appellees with from eight hundred to one thousand barrels of whisky branded as indicated. On the other hand, it appears that the distilling concern of F. G. Paine & Co., of Louisville, Ky., the predecessors of the appellant, attempted to adopt the words "Kentucky Comfort" as a trade-mark for their whiskies as early as the fall of 1882, and in fact sold some whisky under that name. They did not, however, at that date, actually brand the words on any barrels of whisky, or apply them directly in any form to their goods. One of the members of the firm did apply to one Jones, a designer of brands, and agreed to take the design and brand in question, but the time when he was to have the branding iron actually made was left open, and as to this time there seems to be some dispute. At any rate, after selling some whiskies under that name, this firm did apply to Jones, about the 1st of April, 1883, for the iron, expecting to get the brand they had contracted

for some months before.   They learned that a few days
before that Jones had let the Boldrick-Callaghan Company
have the brand, but, upon insisting that they were entitled
to it by prior contract, Jones agreed to see the other com-
pany to know what he should do.   He says he got permis-
sion from a member of the Callaghan Company to make
the branding iron for Paine & Co., and did so.   Paine & Co.
also at once gave notice to the Boldrick-Callaghan Com-
pany that they claimed the name, and warned them against
its use.   The brand so made was actually put on the bar-
rels of F. G. Paine & Co., on the 10th of April, 1883, which
appears to be the same day that appellees received their
goods at Ft. Worth, and first offered them to the public
under the brand and trade-name of "Kentucky Comfort,
Casey & Swasey, Sole Proprietors."   Since that date, F. G.
Paine & Co., and their successor, the appellant, have built
up a large demand for this brand of whisky all over the
country.   Indeed, it is shown that their use of it has been
four or five times as great as that of the appellees.   In all
the trade journals of the country the whisky branded by
appellant as "Kentucky Comfort" has been advertised and
the value of the brand has come in great part from the
moneys expended by appellant in such advertisements.
Their sales of this brand amount to from three to five
thousand barrels per year.

   There are many interesting details connected with the
original selection  of these words and the obtention of the
brand, and its application to the goods of the appellees
and appellant, to which we have not adverted.   These
facts would have been important ten years ago, in a con-
test between these parties for this trade-mark.   The un-
disputed facts are, however, that, with the knowledge of
both sides to this controversy, there have been two brands

of "Kentucky Comfort" whisky on the market since 1883, and neither party has seen fit to take steps against the other to try the question of title thereto. The chancellor found the appellees had first actually applied the words to their goods. We think this is, at least, a very doubtful question. Certainly the first sale and *delivery* of the goods so branded was the sale and delivery of the goods of appellant shown to have been on April 10th; and it was on this day appellees received their whisky so brand ed for them at Ft. Worth, and on that day presumably offered it for sale. It may be that the application of the brand to the goods at the distillery in Kentucky was sufficient to constitute a prior appropriation of the words, but, if this is true, the difference in time between the dates of actual application of the words by the two claimants was only a few days; and, however important this might have been in a contest then inaugurated, it ought not to affect the question now. Each party was clearly acting in good faith in the selection of the words, and there was no intention on the part of either to wrongfully appropriate the invention or the property of the other. As a matter of fact, the parties for 10 years have acted on the theory that their geographical position made it unimportant to put to the test the question who was technically entitled to this trade-mark. The appellees have stood still too many years with knowledge of the fact that appellant has been expending large sums of money in extending the use of and demand for this brand of whisky, and ought not to be permitted now to reap the benefit of the appellant's industry and enterprise. This is not a case where one who is clearly the owner of a trade-mark is seeking to withdraw his permission for its further piratical use. In Prince's Metallic Paint Co. v. Prince Mfg. Co., [6 C. C. A., 647,] 57 Fed.,

938, it is said: "Now, it is true that, where the plaintiff's title to a trade-mark is clear, mere delay, unaccompanied by anything else, will not ordinarily bar a suit for injunction against a naked infringer. Fullwood v. Fullwood, 9 Ch. Div., 176; McLean v. Fleming, 96 U. S., 245; Menendez v. Holt, 128 U. S., 514, 9 Sup. Ct., 143. But we are dealing with no such case. In courts of equity the rule is to withhold relief where there has been unreasonable delay in prosecuting a claim, or long acquiescence in the assertion of adverse rights. Creath's Adm'r v. Sims, 5 How., 192; Godden v. Kimmell, 99 U. S., 201; Lansdale v. Smith, 106 U. S., 391, 1 Sup. Ct., 350. Again and again has it been judicially declared that nothing can call into activity a court of equity but conscience, good faith, and reasonable diligence. McKnight v. Taylor, 1 How., 161; Sullivan v. Railroad Co., 94 U. S., 806-812. In McLaughlin v. Railway Co., 21 Fed., 574, Judge Brewer held a bill for the infringement of a patent alleging the unauthorized use and construction of a patented invention for thirteen years, without stating an excuse for the plaintiff's delay in suing, to be demurrable. Laches for even less than the statutory period of limitations, aided by other circumstances, will bar a right. Ashhurst's Appeal, 60 Pa. St., 290, per Strong, J. In Lewis v. Chapman, 3 Beav., 133, the master of the rolls refused an injunction to restrain the infringement of a copyright on the ground of six and one-half years' delay, where there was knowledge of the commencement and prosecution of the defendant's publication. Long acquiescence before filing a bill for an injunction, with full knowledge of the infringement, is deemed laches equivalent to a breach of good faith. Browne, Trade-Marks, section 497. Hence, in Manufacturing Co. v. Garner, 55 Barb., 151, a delay of nine years in applying for an injunction to

restrain infringement of a trade-mark was held to be good cause for refusing it." We have quoted at length from this case, because it evidences a full investigation of the authorities, and announces what we conceive to be a sound rule of law, and one quite applicable to the case at hand, viewed from appellees' standpoint. That case was one where the plaintiff had a clear title to the trade-mark, but the defendant had for more than eight years been using it "under a known assertion of right, and at least color of title," and had, by constant and successful advertisement, extended the market for the article, and largely enhanced its reputation; and the court held that "to take from the defendant the trade advantages thence ensuing, and give them to the plaintiff—the certain effect of an injunction—would be unconscionable;" and we so think here.

The judgment is reversed, with directions to dismiss the petition.