## Bonnie & Company v. Bonnie Bros.

(Decided October 23, 1914.)

### Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

1. Trademark—Infringement—Unfair Competition.—Where a member of a whiskey firm retires and sells all his interest in the business, including his interest in the trademark "Bonnie Rye," to the other members of the firm, and afterwards goes into the same business and sells whiskey under the brand and label of "Bonnie & Co. Rye," and the label is similar in its essential features to the label used by the firm of which he was formerly a member, such label is an infringement of the trademark "Bonnie Rye," and is so calculated to deceive the public as to constitute unfair competition.

2. Equitable Relief—When Refused—Fraud.—Where it is doubtful if the Federal Pure Food and Drug Act requires straight whiskies, made at different times, to be labeled a blend, the fact that one, prior to the time that the label was pirated,

sold whiskey under the label of "Straight Whiskey," and at the time the label was pirated sold it under the label "Kentucky Whiskey," though consisting of two straight whiskies made at different times, and though a technical violation of the Federal Pure Food and Drugs Act in that it was not labeled a blend, it not appearing that the label was intended to or did operate as a fraud on the public, is not sufficient to justify the court in withholding relief in an action to enjoin infringement of the trademark and label.

8. Trademark—Infringement—Laches — Limitations. — Infringement of a trademark is a continuing injury, and neither laches nor limitation, though available as a defense to an action for damages, is available as a defense to an action for relief from such infringement by way of injunction.

GIBSON & CRAWFORD for appellant.

JOHN BRYCE BASKIN and ROBT. C. KINKEAD for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

This is an action by plaintiff, Bonnie Bros., a corporation, against defendant Bonnie & Company, another corporation, to enjoin the latter from using as a trade mark or label upon its bottles of rye whiskey the words "Bonnie & Co., Rye" on the ground that "Bonnie & Co., Rye" is an infringement of plaintiff's trade mark "Bonnie Rye," and also constitutes unfair competition. The chancellor granted the relief prayed for by plaintiff, and defendant appeals.

The house of Bonnie Bros. has been in the wholesale liquor business in Louisville for about thirty-five years, and during that time has been the owner of and has been engaged in selling the following brands of whiskey: "Bonnie Rye," "Joel B. Frazier," "Nelson Club," "Bonnie Bourbon" and "Bonnie Malt." For the past fifteen years they have been distillers of the foregoing brands of whiskey.

Originally the firm name was Bonnie & Company. In 1879, the firm of Bonnie Bros. succeeded the original firm of Bonnie & Company. The firm of Bonnie Bros. was composed of F. W., W. O., R. P., and E. S. Bonnie. In 1895, F. W. Bonnie retired from the firm, selling his interest in the business, including the brands, to his brothers, W. O., R. P. and E. S. Bonnie. In January, 1899, E. S. Bonnie, in consideration of about $70,000, represented by various notes bearing interest at the rate of six per cent per annum, payable semi-annually, sold

his interest in the business, including his interest in the foregoing brands of whiskey, to W. O. and R. P. Bonnie, who continued the business under the firm name. Very soon after the sale E. S. Bonnie went into the same business with W. A. Reisert and O. H. Irvine, under the firm name of E. S. Bonnie & Company. O. H. Irvine withdrew from the firm in about a year, and the firm of E. S. Bonnie & Company continued in business with E. S. Bonnie and W. A. Reisert as the only partners. On November 21, 1902, E. S. Bonnie, W. A. Reisert and Wm. T. Hale converted the firm into a corporation under the style of E. S. Bonnie & Company. Of the owners of the corporation, one had been a partner and the other two employes of Bonnie Bros. On March 21, 1903, E. S. Bonnie & Company changed its corporate name to Bonnie & Company. Before E. S. Bonnie & Company incorporated, they began selling whiskey under the brand of ''Bonnie Club.'' Plaintiff contended that the use of the label and brand ''Bonnie Club'' pirated certain labels of Bonnie Bros. After some correspondence on the subject E. S. Bonnie & Company abandoned the use of the label ''Bonnie Club.'' E. S. Bonnie died in May, 1907, and his stock in Bonnie & Company passed into other hands.

On April 30, 1903, the firm of Bonnie Bros. incorporated under the name of Bonnie Bros., and the corporation took over the assets and brands of the firm.

(1) For defendant it is insisted that a man's name is his own property, and he has the same right to its use and enjoyment as he has to that of any other species of property; that if such use be a reasonable, honest and fair exercise of such right, he is no more liable for the incidental damage he may do to a rival trader than he would be for an injury to a neighbor's property by smoke issuing from his chimney, or for the fall of a neighbor's house caused by reasonable excavations on his own land. Brown Chemical Co. v. Meyer, 139 U. S., 540. The rule contended for, however, has no application to the facts of this case. Here E. S. Bonnie retired from the firm, and not only sold his interest in the business, but sold his interest in the trade mark ''Bonnie Rye'' and other brands. Not only so, but his associates in the new business which he organized knew of this fact. Notwithstanding this sale, the defendant soon began to sell a brand of whiskey known as ''Bonnie Club.'' After abandoning the use of this brand they put out a new label ''E. S. Bonnie & Co. Rye.'' It then dropped the

letters "E. S." and began to sell "Bonnie & Co. Rye," with a label, though differing in some respects from the label of plaintiff, very similar in its most striking features. It is not sought in this action to enjoin defendant from the use of the word "Bonnie" in its corporate name. It is sought to enjoin the use of the brand "Bonnie & Co. Rye," and the use of the label on which it appears, because of infringement, and because plaintiff's label is simulated in such a manner as to constitute unfair competition. It is true that the word "Rye" is a generic term, and cannot of itself be appropriated; but when used in connection with the word "Bonnie," even though the word "Bonnie" be a surname, the trade mark becomes specific in character, and there can be no doubt that the brand "Bonnie & Co. Rye" infringes the brand "Bonnie Rye." Furthermore, it is difficult to understand why the brand "Bonnie & Co. Rye" was adopted if it was not thereby intended to induce the belief on the part of the purchasing public that they were in fact purchasing "Bonnie Rye." Equity gives relief in such a case on the ground that one man is not allowed to offer goods for sale representing them to be the manufacture of another trader in the same commodity. Seixo v. Provzende, L. R. 1 Ch. Ap. 195. So it is held that no trader can adopt a trade mark so resembling that of another that ordinary purchasers buying with ordinary caution are likely to be misled. McLean v. Fleming, 96 U. S., 245, 25 L. Ed., 828.

But it is insisted that plaintiff's label is itself a violation of law, and a fraud on the public, and that being true, plaintiff does not come into equity with clean hands, and is not, therefore, entitled to relief.

Section 8 of the Federal Food and Drug Act of June 30, 1906, provides in part as follows:

"That the term 'misbranded' as used herein, shall apply to all drugs, or articles of food or articles which enter into the composition of foods, the package or label of which shall bear any statement, design, or device regarding such article, or the ingredients or substances contained therein which shall be false or misleading in any particular, and to any food or drug product which is falsely misbranded as to the State, Territory, or country in which it is manufactured or produced.

"That for the purposes of this Act any article shall be deemed to be misbranded.

"First. If it be an imitation of or offered for sale under the name of another article."

By sub-section 4 of Section 8 it is provided:

"If the package containing it or its label shall bear any statement, design, or device regarding the ingredients or the substances contained therein, which statement, design or device shall be false or misleading in any particular; Provided, that an article of food which does not contain any added poisonous or deleterious ingredients shall not be deemed to be adulterated or misbranded in the following cases: * * *

"2d. In the case of articles labeled, branded or tagged so as to plainly indicate that they are compounds, imitations or blends, and the word 'compound,' 'imitation,' or 'blend,' as the case may be, is plainly stated on the package in which it is offered for sale, provided that the term 'blend' as used herein shall be construed to mean a mixture of like substances, not excluding harmless coloring and flavoring ingredients used for the purpose of coloring and flavoring only."

Section 3 of the Act is as follows:

"That the Secretary of the Treasury, Secretary of Agriculture and Secretary of Commerce and Labor shall make uniform rules and regulations for carrying out the provisions of this Act, including the collection and examination of specimens of food and drugs manufactured or offered for sale in the District of Columbia or any territory of the United States, or which shall be offered for sale in unbroken packages in any State other than that in which they shall have been respectively manufactured or produced, or which shall be received from any foreign country or intended for shipment to any foreign country or which may be submitted for examination by the chief food, health or drug officer of any State, Territory, or the District of Columbia, or any domestic or foreign port from which said product is offered for interstate commerce, or for export or import between the United States or any foreign port or country."

Pursuant to the above act the Secretary of Agriculture and the Secretary of Commerce and Labor, on February 16, 1910, promulgated Inspection Decision No. 113, wherein it is provided as follows:

"Under the Food and Drugs Act of June 30, 1906, all unmixed distilled spirits from grain, colored and flavored with harmless color and flavor, in the customary

ways, either by the charred barrel process, or by the addition of caramel and harmless flavor, if of potable strength and not less than 80 proof, are entitled to the name whiskey without qualification. If the proof be less than 80, i. e., if more water be added, the actual proof must be stated upon the label, and this requirement applies as well to blends and compounds of whiskey.

"Whiskies of the same or different kinds, i. e., straight whiskey, rectified whiskey, redistilled whiskey, and neutral spirits whiskey, are like substances and mixtures of such whiskies, with or without harmless color or flavor used for purposes of coloring and flavoring only, are blends under the law and must be so labeled. In labeling blends the Act requires two things to be stated upon the label to bring the blended product within the exception provided by the statute: First, the blend must be labeled, branded or tagged so as to plainly indicate that it is a blend, in other words, that it is composed of two or more like substances, which in the case of whiskey must each of itself be a whiskey, and second, the word 'blend' must be plainly stated upon the package in which the mixture is offered for sale. A mixture of whiskies, therefore, with or without harmless coloring or flavoring, used for coloring and flavoring only, is correctly labeled 'Kerwan Whiskey, A Blend of Whiskies.'

"Nothing in the Food and Drugs Act inhibits any truthful statement upon the label of any product subject to its terms, such as the particular kind or kinds of whiskey, vended as whiskey or as blends or compounds thereof, but when descriptive matter, qualifying the name whiskey, is placed upon the label, it must be strictly true, and not misleading in any particular. The law makes no allowance for seller's praise upon the label, if false or misleading, and the product is misbranded if a false or misleading statement be made upon one part of the label, and the truth about the product be stated upon another part. Similarly a product is misbranded if the label is false or misleading through the use of a trade-marked statement, design or device. The fact that a phrase, design or device is registered in the United States Patent Office gives no license for its deceptive use. All descriptive matter qualifying or particularizing the kind of whiskey, whether volunteered or required by the law to be stated, as in the case of blends and compounds, must be given due prominence as compared

with the size of type and background in which the name whiskey appears, so that the label as a whole shall not be misleading in any particular.

"Food Inspection Decisions 45, 65, 95 and 98, and all rulings in conflict herewith, are hereby revoked."

Defendant's position is this:

Plaintiff's goods are not only sold in this State but also shipped from this State to other states. Its label is therefore actually used in interstate commerce. For a while plaintiff's whiskey sold under the label of "Bonnie Rye" was labeled "Straight Whiskey." In 1911 the word "straight" was dropped, and it was labeled simply "Whiskey." Plaintiff admits that the whiskey so labeled and sold is a blend of two or more straight whiskies of different ages. That being true, defendant contends that plaintiff's whiskey should have been labeled a blend of whiskies or a blend of straight whiskies. As this was not done, the whiskey was misbranded, and being a false brand was a fraud on the public. This contention is borne out by the Food Inspection Decision, *supra*. In other words, defendant insists that only whiskies of the same distillation are entitled to be labeled "Straight Whiskey" or "Whiskey." In answer to this contention plaintiff insists that two straight whiskies are the same substance and not like substances, and therefore the use of the word "blend" is not required by the Federal Food and Drugs Act. On this proposition defendant offered two witnesses, one of whom testified that whiskies made on different days would constitute a blend. The other testified that straight whiskey is one whiskey out of one barrel. The precise question before us does not seem to have been passed upon by the Federal Courts. The Act itself is by no means clear. If two whiskies made at different times are not the same substance, and if only whiskies made at one distillation are the same, what period of time will constitute one distillation? Must the whiskies be made the same moment, the same hour, the same day, the same month, the same season or the same year? It must be admitted, therefore, the question is one of considerable doubt. At the time plaintiff sought this injunction it was labeling its bottles simply "Whiskey." If, because the whiskey thus sold was composed of two or more straight whiskies, made at different times, it should have been marked a blend, we conclude that at most plaintiff was guilty simply of a technical violation of the Pure Food and Drugs Act.

The label on the bottle showed that it contained Kentucky whiskey. It is not contended that any other whiskey was used in the bottle. Purchasers were informed of the fact that it was Kentucky whiskey. They believed that they were purchasing Kentucky whiskey, and as a matter of fact received Kentucky whiskey. We are not disposed, therefore, to hold that plaintiff intended a fraud on the public, or that as a matter of fact the label was used for the purpose of fraud, or calculated to deceive the public.

The facts do not bring it within the rule laid down in Worden, &c. v. California Fig Syrup Co., 187 U. S. 517, 47 L. Ed., 282. There it was held that the use of the term "Syrup of Figs" to designate a laxative medicinal preparation, together with printed statements and designs upon the bottles containing the compound and on the cartons and wrappers, calculated to induce the public falsely to believe that fig juice was an important element in the composition of such preparation, whose operative laxative element was senna, involved such deceit and misrepresentation as would deprive the manufacturer of equitable relief against the sale by another of a medicinal preparation named, marked, and packed in imitation of the older medicine, for the purpose and with the design and intent of deceiving purchasers and inducing them to buy the new preparation instead of the old one. In the case of Krauss v. Jos. R. Peebles' Sons Co., 58 Fed., 585, plaintiffs sought to enjoin the defendants from using a Pepper whiskey label on Pepper whiskey which Peebles' Sons Company were selling in violation of an alleged contract. It was held that plaintiffs were not in equity with clean hands, for the label sought to be protected described the whiskey as "Old Pepper Whiskey," when in truth and in fact part of the whiskey was not made by Pepper. It is well settled that to preclude plaintiff from relief his representations must be both intentional and material, so as to constitute a deliberate fraud on the public. Nims on Unfair Business Competition, page 480. Thus, relief is frequently denied where there is a misrepresentation as to the identity of the manufacturer. Manhattan Medicine Co. v. Nathan Wood, &c., 108 U. S. 218, 27 L. Ed., 706; Leather Cloth Co. v. American Leather Cloth Co., 4 De G. J. & S., 137; Prince Mfg. Co. v. Prince's Metallic Paint Co., 135 N. Y., 24, 17 L. R. A., 129; or, where there is a misrepresentation as to the

place of manufacture. Elgin National Watch Co. v. Illinois Watch Case Co., 45 L. Ed., U. S. 365. The rule is also applied where as in the case of Worden, &c. v. California Fig Syrup Co., *supra,* and Krauss v. Jos. R. Peebles' Sons Co., *supra,* there was a misrepresentation as to the nature of the article sold. In the case before us, as said before, there is no proof to the effect that other manufactured whiskey was sold under the label of "Bonnie Rye." There is no misrepresentation as to the place of manufacture, or as to the real nature of the article. The only misrepresentation relied on is that the National Pure Food and Drugs Act is violated because two whiskies made at different times are not labeled a blend. In view of our great doubt as to whether or not plaintiff's label as thus used constituted a technical violation of the National Pure Food and Drugs Act, and since we do not believe that it was designed or was calculated, to deceive the public, or was intended to operate, or did operate, as a fraud on the public, we are not disposed to deny plaintiff the relief asked for on the ground that he does not come into equity with clean hands.

Lastly, it is insisted that as Bonnie & Company have used the words "Bonnie & Co. Rye" as a brand of whiskey for more than ten years, plaintiff's right of action is barred by the statute of limitations. Whether or not the statute, if available as a defense, would apply under the facts of this case we deem it unnecessary to decide. It is sufficient to say that by the great weight of authority, the infringement of a trademark is a continuing injury, and though laches and limitation may defeat an action for damages, neither laches alone nor limitation is available as a defense to an action for relief by way of injunction for such infringement. El Medello C. M. Co. v. Gato, 7 Southern, 23; McLean v. Fleming, 96 U. S., 245; Menendez v. Holt, 128 U. S. 514; Layton P. F. Co. v. Church, Etc., 182 Fed., 24; Gaines v. Whyte Co., (Mo.), 81 S. W. 648; Cedar L. H. Co. v. Cedar L. H. Co., 79 Wis., 297, 48 N. W. 371. To the extent that Northcutt v. Turner, Etc., 101 Ky. 314, announces a contrary doctrine, it is hereby overruled.

Judgment affirmed.