# Stratton & Terstegge Co. v. Stiglitz Furnace Co.

(Decided March 12, 1935.)

CRAWFORD, MIDDLETON & SEELBACH and MURRAY & ZUGELTER for appellant.

WOODWARD, HAMILTON & HOBSON and THOS. S. DAWSON for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The suit by the appellant seeks to enjoin the defendant from using the word "Monarch" as a trademark on furnaces sold in Kentucky and for an accounting of damages claimed for infringement and unfair competition. The appeal is from the judgment denying relief and dismissing the petition.

Some time before 1890 the Kruse & Dewenter Company, of Indianapolis, began the manufacture of a steel warm air furnace which was given the name of "Monarch." This was sold in Louisville for a while by a firm which went out of business. Not long thereafter, about 1902 or perhaps earlier, Stratton & Terstegge Company was organized, and a contract was made by it and Kruse & Dewenter whereby it was agreed that Kruse & Dewenter would sell its furnaces to Stratton & Terstegge as sole agents and distributors in certain territory, including the state of Kentucky, for one year: A similar contract for the limited term was made every year until 1927. The prices varied from time to time, and the transactions were straight-out sales and purchases under the monopolistic terms of the contracts; Stratton & Terstegge establishing its own selling prices independent of any control of the manufacturer. If not from the commencement of these relations, it was shortly thereafter that the name of Kruse & Dewenter was eliminated from the furnaces sold appellant, and only the name of Stratton & Terstegge, together with the trade-mark "Monarch," was placed upon them. That company advertised the furnace extensively during the period of twenty-five years or more; but the manufacturer made substantial contributions to the cost. Its sales were many and satisfactory. The name "Monarch" in association with Stratton & Terstegge became familiar, and the local public understood that the "Monarch" was that company's furnace. There was evidence, however, showing that among the trade generally it was known that the Kruse & Dewenter Company was the manufacturer of this furnace. In parts of the country other than in the territory covered by appellant's contract that company extensively sold the same furnace under the name "Monarch."

Because the manufacturer had not kept the furnace modernized according to the ideas of Stratton & Terstegge, in 1927 that company declined to renew the contract with Kruse & Dewenter and contracted with

the Williamson Heating Company of Cincinnati to make a furnace for it similar in general construction but different in particular respects. This was also given the name "Monarch" and put upon the Kentucky market by Stratton & Terstegge. In 1931 Kruse & Dewenter entered into a contract with the appellee, Stiglitz Furnace Company, for the handling of its "Monarch" furnaces in the territory, and that company proceeded to advertise and handle them in Kentucky in the same manner as had the appellant in the years past, advertising itself as exclusive agent for "Monarch" furnaces. This suit followed. There was no counterclaim. Inasmuch as the appellee was authorized by Kruse & Dewenter thus to use the name, the decision is dependent upon that company's right to the trade-mark.

The use of marks for the purpose of indicating the maker or seller of merchandise has existed for centuries. They are found on articles discovered in the ruins of the ancient civilizations. In time, such distinctive and identifying marks came to have legal significance, and the English courts early began to protect persons using them against their competitors copying the marks upon their goods. Nims on Unfair Competition & Trade-Marks, sec. 185; Trade-Mark Cases (United States v. Steffens) 100 U. S. 82, 25 L. Ed. 550. A mark or name used in trade designates and distinguishes the goods one manufactures or sells, and its function is to enable him to secure such profits as result from an established reputation and to protect his good will, or at least to point out the maker of the article to which it is attached. Its object likewise is to enable the consumer to identify the commercial source of the merchandise. The right of adoption and use of these distinguishing names, symbols, or devices to the exclusion of all others is property in a qualified sense, for the violation of which damages may be recovered or an injunction against infringement or piratical use may be obtained. 63 C. J. 311; Trade-Mark Cases, supra; Hanover Star Milling Company v. Metcalf, 240 U. S. 403, 36 S. Ct. 357, 60 L. Ed. 713; Beech-Nut Packing Company v. P. Lorillard Company, 273 U. S. 629, 47 S. Ct. 481, 71 L. Ed. 810; Avery v. Meikle, 81 Ky. 73; Commonwealth v. Kentucky Distilleries & Warehouse Company, 132 Ky. 521, 116 S. W. 766, 21 L. R. A. (N. S.) 30, 136 Am. St. Rep. 186, 18 Ann. Cas. 1156; Newport

Sand Bank Company v. Monarch Sand Mining Company, 144 Ky. 7, 137 S. W. 784, 34 L. R. A. (N. S.) 1040; Bonnie & Co. v. Bonnie Bros., 160 Ky. 487, 169 S. W. 871; Mayfield Milling Company v. Covington Brothers & Co., 212 Ky. 262, 278 S. W. 562. As between conflicting claimants, priority of adoption and use determines the controversy although there are some qualifications, such as a difference in the character of goods or in markets. Old Times Distillery Company v. Casey & Swasey, 104 Ky. 616, 47 S. W. 610, 20 Ky. Law Rep. 994, 42 L. R. A. 466, 84 Am. St. Rep. 480; E. H. Taylor, Jr. & Sons Co. v. Taylor, 124 Ky. 173, 85 S. W. 1085, 27 Ky. Law Rep. 625; Nims, sec. 217; 63 C. J. 321, 340; Yellow Cab Company v. Sachs, 191 Cal. 238, 216 P. 33, 28 A. L. R. 105.

Statutes have been enacted in many jurisdictions to protect, or rather to fortify the protection of, these rights, the principal of which is the federal law. U. S. Code, title 15, sec. 81 et seq. (15 USCA sec. 81 et seq.). We have in this state statutes relating to the publication, registration, and protection of branded bottles and other containers (section 1279 et seq.) and logs and timber (section 1409-1 et seq.); also labor union labels (section 4749 et seq.). The registration of a trade-mark under a statute is deemed prima facie evidence of ownership, but the property right depends upon acquisition by prior use. U. S. Code, title 15, sec. 96 (15 USCA sec. 96); Robertson v. United States, 52 App. D. C. 368, 287 F. 942; Gaines & Co. v. Rock Springs Distilling Company (C. C.) 179 F. 544; Columbia Mill Company v. Alcorn, 150 U. S. 460, 14 S. Ct. 151, 37 L. Ed. 1144. We are here concerned with a common-law trade-mark, which is one appropriated under the rules of the common law, regardless of the statutes. Nims, sec. 185; 63 C. J. 309; United States Ozone Co. v. United States Ozone Company of America (C. C. A.) 62 F. (2d) 881. The case must be determined under those rules.

It seems to be conceded that Kruse & Dewenter, by reason of priority of appropriation owns the trade-mark "Monarch" as applied to furnaces, elsewhere than in Kentucky, and that in the beginning of its relations between that company and the appellant it was entitled to its exclusive use. Appellant contends that it acquired the exclusive territorial right to use the trade-mark through abandonment and a species of adverse possession. It is maintained that, by reason of its extensive

advertisement, sale, and repair of furnaces in exclusive association with its own name and entirely disassociated from the name of the manufacturer, and the resultant identity with its name and consequent development of the related good will in Kentucky, appellant became and is entitled to the trade-mark and the right to place it upon an entirely different furnace manufactured by another, and to protection from infringement by the appellee as the dealer in the original "Monarch" furnaces. It is argued that the relationship of the manufacturer and appellant throughout the years was that of seller and buyer, and not of principal and agent, and that the actions of Kruse & Dewenter resulted in its loss of the trade-mark rights in the word in Kentucky.

It is true there was a straight-out sale and purchase of the furnaces and the seller exercised no dominion over the resale price or otherwise controlled their disposition. But the contracts annually repeated that Stratton & Terstegge Company was the sole agent of the manufacturer and exclusive dealer in the furnaces, and that Kruse & Dewenter would prevent competition in the designated territory. Hence there was something more than a mere sale and purchase. While, strictly speaking, there was no agency in fact, and the dealer did not represent the manufacturer, such relation as existed is frequently called "sales agency," 55 C. J. 1343, note; Hendrickson v. International Harvester Company, 100 Vt. 161, 135 A. 702, or "exclusive agency," 2 C. J. 421, note; Country Home Light & Power Company v. J. J. Fitzgerald Company, 219 Ky. 313, 292 S. W. 833; Peters Branch of International Shoe Company v. Jones, 247 Ky. 193, 56 S. W. (2d) 994. Whatever the relationship may be called, there was a substantial property right annexed to the sale and purchase which was protected by the courts and for the violation of which relief might have been obtained against the one causing a breach of the contract. Annotations, 45 A. L. R. 1200; 23 R. C. L. 1199; Sedgwick on Damages, sec. 633. In Peck-Williamson Heating & Ventilating Company v. Miller & Harris, 118 S. W. 376, this court sustained a judgment for damages for breach of contract, very similar in its terms to that of the parties in this suit, covering the sale of "Favorite" furnaces to local dealers by a Cincinnati manufacturer, which it breached by establishing another agency or selling to another dealer in the city. Country Home Light & Pow-

er Company v. J. J. Fitzgerald Company, supra. See, also, Peters Branch of International Shoe Company v. Jones, supra, and cases cited. There was therefore, as stated, more than the mere sale of merchandise. There was a contractual relation. Perhaps were the situation as appellant contends the same decision would be required, but we may confine ourselves to the facts of the case in hand.

The conclusion is inevitable that there was never any abandonment of the trade-mark by Kruse & Dewenter in the territory. That a trade-mark may be abandoned or lost by nonuse and the right to the same be acquired by another through appropriation cannot be questioned. Allen & Wheeler company v. Hanover Star Milling Company, 240 U. S. 403, 36 S. Ct. 357, 60 L. Ed. 713; Hopkins, on Trademarks, etc., p. 70; 63 C. J. 523. Abandonment is a matter of action coupled with intention, showing a determination not to enjoy the right any longer. 63 C. J. 523; Saxlehner v. Eisner & Mendelson Company, 179 U. S. 19, 21 S. Ct. 7, 45 L. Ed. 60.

That there was no abandonment by Kruse & Dewenter of its trade-mark is demonstrated fully by its course of action and the relation of the parties. Its acquiescence in the use by its dealer was by contract, which was in no wise inconsistent with its proprietorship. In so far as the trade-mark is concerned, year by year, successively, that company as owner merely granted the appellant the exclusive license to use the brand on and as an incident to the furnaces it made and sold in connection with the dealer's own name for the mutual advantage of the parties. In fact, it put Stratton & Terstegge's name plate on them in substitution of its own. But title to the trade-mark did not pass. 63 C. J. 521. It is not to be overlooked that the manufacturer had much to do with the establishment of the good will, not only through the quality of its product, but by contributing materially to the cost of advertisement. It is written in 63 C. J. 525:

"Permitting a limited use by others is not an abandonment. Use by licensees works no abandonment. Permission to use a figure which constitutes a part of a trademark, conditioned against its use in such a manner as to constitute an infringement, is not an abandonment. Permission to one who is merely a dealer to place his name on articles bearing the

trademark of the manufacturer does not indicate an abandonment of the trade-mark by the manufacturer, particularly if the permission was in accordance with the custom of the trade. So a manufacturer who has adopted a name and label under which he sells his goods does not abandon the right thereto by printing the name of the dealer to whom the goods were sold on the label without the name of the manufacturer."

When a trade-mark accompanies an article sold or authorized to be sold by another, there can be no separation without deception of the public. The right to its use as licensee expires when the contract covering its use terminates. The consent is withdrawn, and the proprietor is entitled to have his trade-mark back unimpaired. Nims, sec. 22; 63 C. J. 521; 26 R. C. L. 869; Nelson v. J. H. Winchell & Co., 203 Mass. 75, 89 N. E. 180, 23 L. R. A. (N. S.) 1150; Hoffman v. B. Kuppenheimer & Co. (C. C.) 183 F. 597; A. I. M. Percolating Corporation v. Ferrodine Chemical Corporation, 139 Va. 366, 124 S. E. 442; Adam v. Folger (C. C. A.) 120 F. 260; McGraw Tire & Rubber Company v. Griffith (C. C.) 198 F. 566; Hicks v. Anchor Packing Company (C. C. A.) 16 F. (2d) 723; Lawrence-Williams Company v. Societe Enfants Gombault et Cie (C. C. A.) 22 F. (2d) 512; Morand Bros. v. Chippewa Springs Corporation (C. C. A.) 2 F. (2d) 237; Vermont Maple Syrup Company v. Johnson Maple Syrup Company (D. C.) 272 F. 478.

As stated in Shaver v. Heller & Merz Company (C. C. A.) 108 F. 821, 824, 65 L. R. A. 878:

"One does not lose the good will of his trade in an article of his manufacture by placing upon it the names of his customers who are engaging in selling it, nor by the fact that the consumers know only the name and excellence of the article, and neither know nor care who makes it."

Appellee places much reliance on George B. Graff Co. v. H. C. Cook Co., 55 App. D. C. 136, 2 F. (2d) 938, but we think the relation of the parties and facts make the case distinguishable. Of closer application is Vermont Maple Syrup Company v. Johnson Maple Syrup Company, supra, which denied a licensee the right to the continued use of a word as a trade-mark. We may appropriately conclude the opinion by adopting the

language of the court in United States Ozone Company v. United States Ozone Company of America (C. C. A.) 62 F. (2d) 881. The claims of appellant of the ownership of and right to use the trade-mark are not convincing. Such claims as it had originated in the sales agency contracts wherein it was given exclusive sales rights, and, solely for the purpose of the contract, was permitted to use the trade-mark in advertising and selling the products manufactured by its owner. Nothing appears in the contract or elsewhere which indicates any intention of the parties, respectively, to give up or to take over the trade-mark "Monarch" except for the limited purposes of their contract. When that contract came to an end, appellant's rights to any use of the mark likewise came to an end.

While the basis of the chancellor's decision was somewhat different, his conclusion was the same. Accordingly, the judgment is affirmed.