# U-Drive-It Co. v. Wright & Taylor.

(Decided Nov. 16, 1937.)

WOODWARD, DAWSON & HOBSON, FRANKLIN P. HAYS, and H. H. ROTH for appellant.

ALLEN P. DODD, Sr., for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The case is one of unfair competition. We give the essential allegations of the appellant's petition as amended, which was dismissed upon a failure to plead further after a demurrer was sustained to it.

The plaintiff is an Ohio corporation, and since November 1, 1935, has been continuously engaged in the city of Louisville in the business of renting automobiles to be driven by persons hiring them. It has built up a valuable and profitable business, and used its corporate name, "The U-Drive-It Company," in advertising and dealing with the public. Its name is a valuable asset, developed by the spending of large sums of money in establishing a good will. The public has come to and does associate the name "The U-Drive-It Company," with the plaintiff's business, and it is so recognized in the community. On March 1, 1929, another corporation was created under the laws of Kentucky by the name of "U-Drive-It Company, Incorporated," which engaged in the same business until October 29, 1935. During that period it built up a valuable and profitable business, always using the name "U-Drive-It Company." On that date the Kentucky corporation sold its assets to the plaintiff, assigning and transferring the right to use the name "U-Drive-It," and agreed to and did dissolve and cancel its corporate name. The good will and the association which the public had made of the term "U-Drive-It" with that company was carried over to the plaintiff, and since November 1, 1935, has been associated with its business. From March 1, 1929, until January 1, 1936, when the defendant began its operations, no other business conducted in Louisville or vicinity used the name "U-Drive-It," or any term having the same sound.

The defendant, Wright & Taylor, is a Kentucky corporation. Since about January 1, 1936, it has been engaged in the business of renting automobiles to be driven by the persons hiring them. On or about March 30, 1937, the defendant filed in the office of the clerk of the Jefferson county court notices that it was the owner of "Francis You Driveit Garage" and "You Driveit Francis Garage." The defendant is now conducting its business under the names of "Francis You Driveit Garage" and "You Driveit Francis Garage," and maintains a sign on its place of business, "You-Drive-It Company." The sign and names under which the de-

fendant is operating are confusing to the public, and have led the public to believe that the plaintiff is conducting the business being operated by the defendant. The defendant also maintains a sign on its garage, "Branches in Principal Cities," when in fact it has never had and now has no other business in any other city similar to its business in Louisville. The "U-Drive-It Company, Inc.," did have branches in cities other than Louisville, and the plaintiff for many years has operated branches in other cities. It is alleged that the maintenance of this sign has been intended by the defendant to deceive the public into believing that the plaintiff is engaged in the business operated by the defendant; that the same is calculated to deceive the public, and has caused the public to patronize the defendant under such belief.

The petition asks an injunction against the defendant enjoining it from using the name "Francis You Driveit Garage" and "You Driveit Francis Garage" in connection with the business in renting automobiles; from advertising its business under those names; and from maintaining any signs upon its premises under the phrase "U-Drive-It" therein. By an amended petition it asked an injunction against the defendant using signs containing the words in effect of "Branches in Principal Cities," and an accounting and judgment for all the defendant's net profits made in connection with the term "U-Drive-It."

The appellant submits that its petition states a cause of action, arguing that it pleads the defendant is engaged in unfair competition; that it has intended to deceive the public and has done so; that the phrase "U-Drive-It" is such as to constitute a valid trademark, but in any event it has acquired a secondary meaning in connection with its business in Louisville.

From the slowly developed recognition of a symbol or design as an exclusive trade-mark, there came in 1867 what seems to be the first legal recognition of an exclusive right in a coined word as a distinctive trade-name ("Cocaine" as a hair tonic). Burnett v. Phalon, 42 N. Y. (3 Keyes) 594. The courts reluctantly but eventually recognized that the requirements of commerce and modern trade demanded protection of word emblems. "Trade-Mark Protection and Unfair Trading," Derenberg, pages 28 et seq. The present day spe-

cific law of unfair competition, at least in certain aspects, is of recent origin, generally regarded as having developed at the beginning of the twentieth century. It "is the natural evolution of the law of the trade-mark out of which it has grown." Coty, Inc., v. Parfums de Grand Luxe (C. C. A.) 298 F. 865, 878. Peculiarly, as the Supreme Court has stated, the law of trade-marks was a part of the broader law of unfair competition since there was no property right in a trade-mark except as a right appurtenant to an established business or trade. United Drug Company v. Rectanus, 248 U. S. 90, 39 S. Ct. 48, 63 L. Ed. 141. Cf. Stratton & Terstegge Company v. Stiglitz Furnace Company, 258 Ky. 678, 81 S. W. (2d) 1. The modern application of this broad principle of business integrity and common justice in protecting business reputation was at first by way of analogy to trade-mark law. By this time it has become almost a separate branch of the law, requiring special consideration, although closely interrelated with trade-marks. See Churchill Downs Distilling Company v. Churchill Downs, Inc., 262 Ky. 567, 90 S. W. (2d) 1041; G. W. Cole Company v. American Cement & Oil Company, 130 F. 703 (C. C. A. 7th). In the relationship of the case at bar, the following definition adopted in Newport Sand Bank Company v. Monarch Sand Mining Company, 144 Ky. 7, 137 S. W. 784, 34 L. R. A. (N. S.) 1040, and in Crutcher & Starks v. Starks, 161 Ky. 690, 171 S. W. 433, 435, is appropriate:

> "Unfair competition may be defined as passing off, or attempting to pass off, upon the public the goods or business of one man as being the goods or business of another. Any conduct tending to produce this effect constitutes unfair competition and may be enjoined. The means employed are wholly immaterial."

The law of unfair competition is most active. Equity is quick to prevent misrepresentation or fraud which tends to give to one party an advantage over a competitor by imitating or simulating his peculiar distinctive designation so as to deceive the public. Speaking of the appropriation of another's name, it is said in Aunt Jemima Mills Company v. Rigney & Co. (C. C. A.) 247 F. 407, 410, L. R. A. 1918C, 1039:

> "This is a wrong which equity will enjoin without reference to the character of the article, or to the

question of competition or of prior occupation of the market in any particular territory. No one has a right to apply another's name to his own goods.''

In Schechter Poultry Corp. v. United States, 295 U. S. 495, 55 S. Ct. 837, 844, 79 L. Ed. 1570, 97 A. L. R. 947, Chief Justice Hughes accepts this modern idea as established, saying:

> '' 'Unfair competition,' as known to the common law, is a limited concept. Primarily, and strictly, it relates to the palming off of one's goods as those of a rival trader. * * * In recent years, its scope has been extended. It has been held to apply to misappropriation as well as misrepresentation, to the selling of another's goods as one's own—to misappropriation of what equitably belongs to a competitor. International News Service v. Associated Press, 248 U. S. 215, 241, 242, 39 S. Ct. 68, 63 L. Ed. 211, 221, 2 A. L. R. 293. Unfairness in competition has been predicated of acts which lie outside the ordinary course of business and are tainted by fraud or coercion or conduct otherwise prohibited by law.''

We have thus come a long way from the formative cases in England and America. Still farther removed from old conceptions are some of the recent acts of Congress, and an act of the General Assembly of Kentucky, of 1936 (chapter 109), denouncing certain trade practices as unfair and illegal. Section 4748h-1 et seq., Kentucky Statutes. So we may well heed Mr. Justice Holmes' admonition against relying too implicitly on ''whatever generality of expression there may have been in the earlier cases.'' L. E. Waterman Company v. Modern Pen Company, 235 U. S. 88, 94, 35 S. Ct. 91, 92, 59 L. Ed. 142. This modern concept or policy in respect of regulating trade competition suggests that any act smacking of unfair competitive methods should be viewed with a critical and suspicious eye.

The case at bar, as presented by the petition, is strictly one of unfair competition, since it involves actually competitive enterprises. It affords natural grounds for deception of the public and a more ready acceptance of the charge that another's purpose has been to take advantage of the reputation that one has built up for his adopted name or catchphrase to his

injury. This character of case received much earlier recognition for the intervention of equity than a case where two parties were engaged in a different business or were not in active competition and one was merely taking the advantage of the other's popularity built upon its name. The recent case of Churchill Downs Distilling Company v. Churchill Downs, Inc., supra, is not only typical of the latter class, but is an advance along the line. The unfair conduct charged in the petition also is closer related to the more stringent trade-mark law, since it involves the use of a coined phrase or combination of a letter and words as a designation or trade-name, in order, as it is alleged, that the defendant might pass off for the plaintiff.

Though difficulty is often encountered in the allocation, a sharp legal distinction has always been drawn between a word or phrase that is generic or descriptive and one that is suggestive only. The former is left free for public use and excluded by federal statute (15 U. S. C. A., sec. 85) from registration as a trade-mark and by the common law from exclusive appropriation. Nims, Unfair Competition and Trade Marks, 524, 549, 630; Derenberg, Trade-Mark Protection and Unfair Trading, 257, 269; Barton v. Rex-Oil Company (C. C. A. 3) 2 F. (2d) 402, 40 A. L. R. 424. The term "Drive it Yourself" was held to be nontechnical and descriptive of the business in Drive It Yourself Company v. North, 148 Md. 609, 130 A. 57, 60, 43 A. L. R. 206. The court observed:

> "Nor do we think that the use in some places of the phrase 'U drive it' to designate the same business destroys or affects the descriptive character of the phrase we are considering."

But in Saunders System Atlanta Company v. Drive It Yourself Company, 158 Ga. 1, 123 S. E. 132, the court deemed it unnecessary to decide the point.

The appellee contends that the phrase is general and not entitled to exclusive appropriation. We have held as generic and descriptive the term "mutual deposit" in connection with an insurance business (Industrial Mutual Deposit Company v. Central Mutual Deposit Company, 112 Ky. 937, 66 S. W. 1032, 23 Ky. Law Rep. 2247), and also the term "Travelers Insurance." Travelers' Insurance Machine Company v. Travelers' Insurance Company, 142 Ky. 523, 134 S. W.

877; Id., 143 Ky. 216, 136 S. W. 154. The present desig-
nation "U-Drive-It" is different in that it is a fanciful,
arbitrarily coined phrase. But it seems unnecessary for
the decision of this case to determine whether it is to
be classified as suggestive, and therefore available as
an exclusive trade-name, or as only descriptive or in-
dicative of the character of business. We may proceed
to the determination of the case upon the hypothesis
that it is the latter, hence free for public use generally.
However, in that connection sight must not be lost of
the fact that this phrase is at the same time the princi-
pal part of the corporate name of the plaintiff in Ken-
tucky, and is also claimed by purchase from the dis-
solved Kentucky corporation. The right to protection
of a corporate name from assumption by another is
generally recognized, even though there is only simi-
larity and not identity. 7 R. C. L. 134; 26 R. C. L. 860;
Saunders System Atlanta Company, Inc. v. Drive It
Yourself Company, supra; Drive It Yourself Company
v. North, supra; annotations, 66 A. L. R. 948. But we
likewise avoid as unnecessary a definite commitment on
this point.

Our attention is concentrated on whether this term
"U-Drive-It" acquired a secondary significance in
Louisville and has indicated the plaintiff's business
alone, which we think embraces the right of succession
to the Kentucky corporation. The control of equity
over words and marks used in trade is not defined or
limited by their nature, but by the use which the public
makes of them. Nims, sec. 36. So there seems to be
little if any difference in the right to protection of a
suggestive and of a descriptive name if the latter has
acquired a secondary significance.

There are many definitions of "secondary mean-
ing"; an expression, as often said, not happily chosen,
for this new meaning is primary rather than secondary.
Derenberg, 326. The following comprehensive definition
in 26 R. C. L. 886 is sufficient:

> "Even though a word or combination of words is
> incapable of becoming a valid trademark, yet if it
> has by a sufficiently long and exclusive use acquired
> such a secondary meaning as to indicate in the trade
> that the goods to which it is applied are made by a
> particular manufacturer or are put on the market
> by a particular vendor, its use by another on simi-

lar goods in such a way as to be likely to deceive purchasers will be restrained as unfair competition; and its use even in its primary meaning will be so limiited as to prevent the working of a probable deception by passing off the goods of one maker as those of another.''

See, also, Nims, sec. 37; Derenberg, 326, 347; G. & C. Merriam Company v. Saalfield, 198 F. 369 (C. C. A. 6th). ''Secondary meaning is association, nothing more. It exists only in the minds of those of the public who have seen or known or have heard of a brand of goods by some name or sign and have associated the two in their minds.'' Nims, sec. 37.

The cases applying the rule are many.

In Newport Sand Bank Company v. Monarch Sand Mining Company, supra, the plaintiff, whose business was located at Newport, Ky., for a number of years, had designated the sand which it mined and sold by the name of ''Newport'' with different grades of sand indicated by numerals. The defendant began using the same trade-name and numerals. It was held that while the plaintiff could have no exclusive right to the geographical name of Newport, or the use of numbers, yet such combination had acquired a secondary meaning, and the petition was held to state a cause of action. See, also, Parkland Hills Blue Lick Water Company v. Hawkins, 95 Ky. 502, 26 S. W. 389, 16 Ky. Law Rep., 210, 44 Am. St. Rep. 254; Northcutt v. Turney, 101 Ky. 314, 41 S. W. 21, 19 Ky. Law Rep. 483.

The ''secondary meaning'' of a trade-name or mark may be localized. Nims, sec. 38. A newcomer in the field has no right to use another's distinctive trade-name or designation which, though it be unavailable for exclusive use, has become locally associated with an established business and its use would result in filching or infringing upon his neighboring competitor's good will; nor may he thereby commit a fraud upon him by leading the public to believe, not that he is his neighbor's keeper, but is the neighbor himself. Time is not the exclusive standard in determining whether or not a secondary meaning has been acquired. Barton v. Rex-Oil Company, supra.

Thus, in United Drug Company v. Rectanus, supra, a druggist named Rectanus, who was familiarly known

as "Rex," sold a medicinal preparation in Louisville for many years under the name of "Rex." Some years before he began, Ellen M. Regis in Massachusetts had used the word "Rex," derived from her surname, in connection with a different medicinal preparation. It was subsequently registered in Massachusetts as a trade-mark, but her product had not been sold in Louisville. When her successor in business, a corporation, entered the Louisville market, the Supreme Court held that the corporation which had succeeded Rectanus, viz., Theodore Rectanus Company, could not be enjoined from using the word "Rex" upon the ground of unfair competition. Cf. Metcalfe v. Brand, 86 Ky. 331, 5 S. W. 773, 9 Ky. Law Rep. 801, 9 Am. St. Rep. 282.

In Saunders System Atlanta Company v. Drive It Yourself Company, supra, it was held the phrase "Drive It Yourself," used by the appellee in conducting its business in Atlanta, had become associated in the mind of the public and its customers so as to have a secondary meaning in that city. The appellant, who began using it locally about three years later, was enjoined from using the phrase as its act constituted unfair competition. The Maryland Case, Drive It Yourself v. North, supra, recognized the rule, but in applying it to the facts shown on a trial reached an opposite conclusion.

We pass to the question whether the phrase used by the defendant as a trade-name, "You Driveit" is an infringement upon the plaintiff's trade-name of "U-Drive-It."

The United States Circuit Court in N. K. Fairbank Company v. Luckel, King & Cake Soap Company, 106 F. 498, said that while a trade-mark appeals to the eye, a trade-name appeals to the ear. Mr. Nims, as a motto for his book, adopted this striking statement from Florence Mfg. Co. v. J. C. Dowd & Co. (C. C. A.) 178 F. 73, 75:

"The law is not made for the protection of experts, but for the public—that vast multitude which includes the ignorant, the unthinking and the credulous, who, in making purchases, do not stop to analyze, but are governed by appearances and general impressions."

In our leading trade-mark case of Avery & Sons v.

Meikle & Company, 81 Ky. 73, the court adopted this statement from a Massachusetts opinion:

"It is not necessary that the resemblance produced should be such as would mislead an expert, or such as would not be easily detected if the original and the spurious were seen together. It is enough that such similitude exists as would lead an ordinary purchaser to suppose that he was buying the genuine article and not an imitation."

Lawrence Mfg. Co. v. Lowell Hosiery Mills, 129 Mass. 325, 37 Am. Rep. 362.

And this from another case:

"Resemblance is a circumstance which is of primary importance for the court to consider; because if the court finds, as it does almost invariably find in such cases as this, that there is no reason for the resemblance except for the purpose of misleading, it will infer that the resemblance is adopted for the purpose of misleading."

It is a question really of whether there is a tendency and probability of deceiving at least a part of the public rather than there has been actual deception. Mayfield Milling Company v. Covington Brothers & Company, 212 Ky. 262, 278 S. W. 562. Many persons are incapable of discriminating speech and innumerable others act upon impressions and superficial observation.

A review of the authorities applying this general and broad rule of simulation, from which it may reasonably be concluded that there was confusion between plaintiff's trade and corporate name and the defendant's assumed fictitious trade or operative name, could be very extensive. We may note our own cases of Metcalfe v. Brand, supra; Bonnie & Company v. Bonnie Brothers, 160 Ky. 487, 169 S. W. 871; and Crutcher & Starks v. Starks, supra. In the latter case, it was held that the trade-name "Starks-Company," although intended only to identify a business with its location in the "Starks Building," was an infringement upon the name "Crutcher & Starks," and its use had been properly enjoined.

We are of opinion that the petition states a cause of action, and the demurrer was erroneously sustained to it.

Judgment reversed.