## Newport Sand Bank Co. v. Monarch Sand Mining Co.

(Decided May 30, 1911.)

### Appeal from Campbell Circuit Court.

1. Trade Name—Advertising Business—Trade Name Not Necessarily Identical—A trade name does not have to be identical with that of another in order to justify a court in denying its use because calculated to produce unfair competition. It is sufficient if it is so similar to the earlier adopted trade name as to make it likely that unsuspecting persons would be led to believe that it was the same.

2. Same—Newport—Newport Sand—Newport is the name of a city and Newport Sand means sand taken from the earth at, in or near that city. Any one engaged in the sand business in that city would have a perfect right to sell his sand as "Newport Sand," and no cause of complaint would thereby be afforded any other person dealing in that sand. But where one so advertises its business as to perpetrate a wrong and fraud upon another by leading the public to believe that it is in fact the plaintiff's sand, equity will grant relief without regard to the commercial value of the defendant's sand.

3. Same—Similarity in Names—What Necessary to Show—It is not necessary to show that any one has actually been misled by similarity in names. It is sufficient that the name selected is so similar to that used by its competitor as to likely produce deception.

4. Same—If one is dealing in Newport sand and wishes to continue he must use some term other than that which has been adopted and is being used by another who preceded him in business.

FRANK V. BENTON for appellant.

A. M. CALDWELL for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Reversing.

This is an appeal from a judgment of the Campbell Circuit Court, sustaining a demurrer to a petition The plaintiff alleged that it was, and had been for the twenty years next before the institution of this suit, engaged in the mining and sale of molding sand; that during that time it had expended large sums of money in the purchase of land upon which its sand banks were located, and in advertising the various grades of sand in which it dealt; that to the trade throughout the United States and Canada, its grades of sand were known by the following words and numerals: "No. 2 Newport, No. 3 Newport, No. 4 Newport, No. 5 Newport, and No. 6 Newport;" that the defendants, each one of whom had been in its employ for quite a number of years in a close and confidential relation, and had by reason of this relationship acquired an insight into its business, and learned the names and addresses of all of its customers, with the purpose and intent to injure plaintiff in its good will and trade reputation and to deprive it of profits which it otherwise would have made, had been using plaintiff's trade names in advertising and selling their sands; that by the use of plaintiff's trade names defendants had been enabled to make sales which they would not otherwise have made and received orders which would not otherwise have been sent to them; that they used means and devices calculated to deceive the public, causing them to believe that they were purchasing the sand which they had theretofore purchased from plaintiff, under and by virtue of the trade names which they were using; and that the reputation and good will of plaintiff had by reason thereof been injured, etc. They prayed for an accounting and that the defendants be enjoined from using their trade names in connection with the advertising or sale of molding sand.

The relief here sought is against the perpetration of a fraud calculated to produce unfair competition in business. In A. & E. Ency. of Law, 2d Ed., Vol. 28, p. 409, it is said: "Unfair competition may be defined as passing off, or attempting to pass off, upon the public the goods or business of one man as being the goods or business of another. Any conduct tending to produce this effect constitutes unfair competition and may be enjoined. The means employed are wholly immaterial. The plaintiff need not show a proprietary interest in the names or symbols employed by the defendant to work the decep-

tion. Nothing less than conduct tending to pass off one man's merchandise or business as that of another will constitute unfair competition." Plaintiff does not claim the words and numerals designating the different grades of sand dealt in by it as trade marks, but does claim that, by reason of their long use in connection with its business, they have acquired a secondary meaning, and that to those using molding sand in their business the word and figure "No. 5 Newport" have a well defined meaning, and indicate a sand of a high grade or quality which plaintiff had for a number of years supplied to the trade.

A trade name does not have to be identical with that of another in order to justify a court in denying its use because calculated to produce unfair competition. It is sufficient if it is so similar to the earlier adopted trade name as to make it likely that ordinary and unsuspecting persons—prospective purchasers—would be led to believe that it was the same. This question of similarity or resemblance between two trade names is a question of fact that must be determined by the evidence in each particular case, and it is impossible to adopt any uniform rule that would be applicable alike to all cases. It is sufficient to note that, where there is a similarity in the main distinguishing features of the articles in question, it is usually regarded as sufficient to constitute unfair competition. And again, similarity in a number of points tend to constitute unfair competition, where similarity in any one. of the points might not do so. Here it is charged that the similarity in names is identical in every particular. Each company was dealing in molding sand. Plaintiff had adopted for the name of one grade of its sand, "No. 5 Newport." Defendant adopted the same name for a grade of its sand; and in brief its counsel insists that it had a right to do so, because the sand banks from which these sands were taken lie in the same locality and the sands are in fact identical.

The petition charges that this name was adopted for the fraudulent purpose of enabling defendants to acquire business which would otherwise have come to plaintiff. Plaintiff has no exclusive right to the use of the word "Newport" in connection with its business. "Newport" is the name of a city, and "Newport sand" means sand taken from the earth at, in or near that city.

Anyone engaged in the sand business in that city would have a perfect right to sell his sand as "Newport sand," and no cause of complaint would thereby be afforded any other person dealing in that sand. To hold otherwise would be to create and foster a monopoly—to give to one the exclusive right to advertise and sell sand dug or mined in that locality. This the law forbids. So, too, the numeral "No. 5" is the common property of all, and plaintiff may acquire no exclusive right to the use of this numeral. But the combination of this numeral and proper name, it is alleged, has, by long use and association, come to be known and understood by the trade as designating a particular grade of sand in which plaintiff dealt. Hence, the combination of this word and numeral has come to have a secondary meaning, and plaintiff has acquired a right to its use which the court should protect against one seeking to adopt it or imitate it for the fraudulent purpose of bringing about an unfair competition in business.

The right to the use of any word or figure as a part of a trade name or trade-mark or indicia of one's business is not an absolute right, but a qualified one—a privilege that must be exercised with due regard to the rights of others, as property rights are enjoyed. One has a right to use his property in any way that he sees fit, or make any disposition of it that he desires, so long as such use or disposition does not injure others in the free use and enjoyment of their property. In the case under consideration it is not the use of the word "Newport" in connection with the advertisement of defendant's sand, or of the numeral "No. 5," that is objectionable, but the use of this combination in such a way as to lead the public to believe that the sand which defendants are advertising is in fact the sand sold by plaintiffs. It is immaterial that the sand sold by defendant is in every respect as good, or even better than that sold by plaintiff. This question can not enter into a consideration of the matter in determining plaintiff's right to have defendant enjoined from so advertising its sand. The question is, has it so advertised its business as to perpetrate a wrong and fraud upon the plaintiff by leading the public to believe that it is in fact the plaintiff's sand. If it has, equity will grant the relief without regard to the commercial value of the defendant's sand.

In Avery & Sons v. Meikle & Co., 81 Ky., 73-103, appellant sought to have the appellee enjoined from using certain words, letters and figures in branding their plows which appellants had adopted for their brand. The lower court denied them this right, but in passing upon the question here upon review, it was said:

"Quality, size, description, caution, elements, etc., may be indicated or named by the use of the words, letters, and numerals described above. This is the appellee's right; but it is not because the words, letters, and figures do that, that he is complained of, for he has a right to use them for those purposes. But the complaint is, that these letters and figures have been used not to do this alone which was rightful, but they have been used for an ulterior purpose. The appellees selected the same letters, the same words, the same numerals, and put them in the same colors, and upon the same places on their plows, as were used by appellants on their plows. For what? To represent quality and size alone. Who could believe it? Why not take type from a different font? Why not take other numerals that would serve the same purpose better? * * * No answer can be given, except that a man intends the natural consequences of his own act; and the consequences of this act are to take appellant's trade, built up on his reputation, and transfer it to appellees, by using that reputation to sell appellees' plows."

In E. H. Taylor, Jr. & Sons Co. v. Taylor, 124 Ky., 173, the plaintiff sought to restrain the defendant from so imitating its labels on its bottled goods as to induce the uninitiated public to believe that they were in fact plaintiff's goods. The relief sought was denied in the lower court, but upon review here, this court, in granting this relief, said:

"Appellant sent out thousands of circulars every month advertising its whiskey. It has spent hundreds of dollars in the trade journals and otherwise advertising it as the "Premier Kentucky Whiskey," and it had thus given value to its brand. Appellee's whiskey was a cheaper article, and could be sold at prices at which appellant could not afford to sell its whiskey. The selling of the cheaper goods under labels and advertisements which to the unititiated would indicate that it was appellant's whiskey, so well advertised as a first-class article, can not be sanctioned."

The enunciation of this court in the two cases from which we have quoted aptly illustrates the principle upon which a court of equity will interfere to prevent an unfair competition in trade. As was said in Metcalfe v. Brand, 86 Ky., 331:

"It is one of the principal offices of equity to prevent injury and imposition. Therefore, even if the imitation was unintentional, yet be colorable, and of such a character that a majority of persons would never notice the difference, its use will be enjoined. Otherwise, the purchaser would have imposed upon him a spurious article, and the maker of the genuine be deprived of the profit which he has labored for years, perhaps, to realize. A person may of course use any color, or words in common use, or other indicia, upon his label, or in connection with his goods; but fair competition and common honesty require him to so use them as not to imitate those of another. Any other rule would but sanction fraud and deceit."

It is not necessary to show that any one has actually been mislead by reason of the similarity in names. It is sufficient that the name selected is so similar to that used by its competitor as to likely produce deception. Kentucky Distilleries, &c., Co. v. Wathen, 110 Fed. Rep., 645. In all cases of this character the intent to deceive is the gravamen of the offense, and the very fact that a trade-mark or trade name is adopted that is so similar to that used by another is a circumstance calculated to raise a presumption that it was adopted for the purpose of deceiving the public to the injury of its competitor.

In the case under consideration it is charged, and by the demurrer admitted to be true, that defendant adopted the name "No. 5 Newport" for the express purpose of inducing the public, and particularly the old customers of plaintiff, to believe that this was in fact the sand which they had theretofore been purchasing of plaintiff. Viewed in this light, plaintiffs were guilty of an actionable wrong, for, as held in the Avery case, supra, the use of descriptive terms and generic names is limited to a truthful use, and where such names or terms have become identified in the minds of the public with one's business, the use of such terms and words by another, in a manner calculated to deceive the public by passing off his goods as and for the goods of another, can not be justified. This rule has been extended to the

extent that one may not even use his own name in connection with or as a part of a business or trade name so as to pirate upon the good will or reputation of a business rival by inducing the public to believe that his goods are those of his rival. A man has a right to the use of his own name in connection with his business, but he must use it honestly and fairly, with a due and just regard for the rights of any other person of the same name who may be engaged in a similar business. Rock Springs Distillery Co. v. Monarch, 22 S. W., 1028.

The use of geographical terms is governed by the same rule as that governing the use of personal names; these terms, being indicative of localities, cities, or countries, are the common property of all living there, and can not be exclusively appropriated by anyone. Canal Co. v. Clark, 13 Wall. (U. S.), 311. All coming within the scope of the territorial limit of such geographical name may lawfully and truthfully use it in connection with their business. Thus, anyone engaged in the business of digging and selling sand in Newport or vicinity may sell their sand as "Newport sand." But where a Newport sand dealer has established a reputation for a particular quality of sand, by extensively advertising it as "No. 5 Newport," he is as much entitled to the protection of this trade name as though he had designated this grade of sand as "Monarch Newport," "Royal Newport," or other similar name, and by such name had advertised it for such length of time that it had become valuable to him in his trade.

If defendant is in fact dealing in Newport sand and wishes to continue to do so, and to designate the different grades which he handles, he must use some terms other than those which have been adopted and are being used by plaintiff to designate these grades. In this way only can confusion and unfair competition be avoided.

In our opinion the petition states a cause of action. Judgment reversed and cause remanded for further proceedings consistent herewith.