LOUISVILLE TAXICAB & TRANSFER CO. v. YELLOW CAB TRANSIT CO.

No. 315.

District Court, W. D. Kentucky, Louisville Division.

Dec. 30, 1943.

274

Henry E. McElwain, Jr., Oldham Clarke, and Allen, McElwain, Dinning & Clarke, all of Louisville, Ky., for plaintiff.

Finley F. Gibson, Jr., of Louisville, Ky., and J. B. Dudley, Richmond R. Duvall, and Dudley, Duvall & Dudley, all of Oklahoma City, Okl., for defendant.

MILLER, District Judge.

This action, filed by the plaintiff, Louisville Taxicab and Transfer Company, seeks to enjoin the defendant, Yellow Cab Transit Company, from the use of the names Yellow Cab Transit and Yellow Transit Company in connection with its operations and advertising in Louisville, Kentucky, and vicinity. Plaintiff contends that it has a property right in the trade name "Yellow Cab" in the locality referred to, and that the operations of the defendant are infringing upon that right.

The Louisville Transfer Company was organized in 1861; the Louisville Carriage Company was organized in 1893; these companies were consolidated and succeeded in 1912 by the Louisville Carriage and Taxicab Company, which name was changed in 1919 to Louisville Taxicab and Transfer Company. The charter of this company expired in 1937 through inadvertence and was thereafter succeeded by the plaintiff company incorporated under the laws of Kentucky as its successor. The plaintiff's charter authorized it to engage in the "transportation and transfer of passengers, baggage, packages, merchandise, freight, and other articles, for hire, by means of automobile, taxicabs, auto trucks, and other vehicles." It operates approximately 242 taxicabs in Louisville, Kentucky, and vicinity. It also owns 146 trucks which are leased out to other companies who operate them on a rental basis. It also operates an ambulance service, and hauls baggage by truck to and from railroad stations.

Beginning about 1919 the plaintiff adopted the trade names of "Yellow Cab", "Yellow Cab Truck Rental", "Yellow Baggage Department" and "Yellow Ambulance Service" and continuously since such time has used and featured the name "Yellow" as a part of its several trade names. In addition to adopting these trade names, the plaintiff also adopted a distinctive color scheme and design, in furtherance of which plan it painted its different cabs and vehicles (other than trucks leased out to others) yellow with black trimming and black fenders. Both the trade names and the color scheme have been extensively advertised locally for many years, and prior to 1939 had come to be recognized by the public generally in the locality under consideration as the trade names and color scheme of the plaintiff company. The plaintiff employs about 550 employees, has its principle place of business at 9th and Liberty Streets in Louisville, Ky., transports from 300,000 to 400,000 passengers per month, and confines its activities largely to local business engaging in no inter-

state business. Although it has never considered itself as a common carrier of freight by motor, yet the State of Kentucky has attempted to have it classified as a common carrier and litigation is pending to determine that issue. The plaintiff's reputation and financial standing is excellent in the community in which it operates, and it is one of the biggest companies of its type South of Chicago.

A. J. Harrell, the President and majority stockholder of the defendant, and his brother, Cleve Harrell, organized the Yellow Taxicab and Baggage Company in 1920 in Oklahoma City, Oklahoma. In the latter part of 1924 the two brothers decided to engage in an intrastate bus operation between Oklahoma City and an addition known as Capital Hill which was adjacent to the city, and in December 1924 incorporated the defendant company under the laws of Oklahoma under the corporate name of the Yellow Cab Transit Company. The company sold this line in 1926 and then engaged in the operation of a intercity bus line from Tulsa, Oklahoma, to Oklahoma City, Oklahoma, which was sold to the Greyhound people in 1929. On January 1, 1930, the defendant company began its present business of motor transportation of freight in interstate commerce. It extended its freight operations until in 1939 it purchased the Holsapple Truck Line and began to do business in Louisville, Kentucky. It has never engaged in the taxicab business, but is exclusively operating as a common carrier of freight in interstate commerce. It adopted and used for many years the trade name of Yellow Transit Company before engaging in business in Kentucky. It operates in the seven states of Oklahoma, Texas, Kansas, Missouri, Illinois, Indiana and Kentucky, serving approximately 450 towns with Louisville being its only point in Kentucky. Following the approval of the Interstate Commerce Commission in March 1940 of its purchase of the Holsapple Truck Line, it purchased real estate in Louisville, Kentucky, at 9th and Madison, about one square from the plaintiff's place of business upon which it erected its local terminal for a total investment of approximately $60,000. It solicits business in Louisville, Ky., under the name of Yellow Transit Company through its commercial representatives who make personal contact with the traffic managers of various industrial organizations needing an interstate trucking service. It sends folders to these traffic managers outlining its service. At the present time there is no general public advertising by the defendant, although in the Fall of 1939 when the Company started business in Louisville it ran some newspaper advertising in the local paper under the name "Yellow Transit Company". The defendant's operating equipment is painted yellow with black fenders. It carries in several places in good size lettering the name "Yellow Transit Company" with the words "Freight Lines" immediately beneath the name. The equipment includes about thirty coupes used by its commercial representatives in different cities. These coupes are trimmed in black and are of a color and appearance similar to the taxicabs of the plaintiff. Two of them are used in Louisville, and carry on them, in addition to the defendant's name, the words "Freight Lines" and also "No Passengers." The color and design of the defendant's equipment with the use of the name "Yellow Transit Company" thereon is so similar to the color and design of the plaintiff's equipment with the use of the name "Yellow Cab" on most of the same as to cause the ordinary, casual member of the general public to have the mistaken belief that the defendant's operations in the locality under consideration were a department or subsidiary division of the plaintiff's overall operations. The similarity is such as to likely produce deception.

Defendant's reputation and financial standing in the territory in which it operates is excellent; before purchasing the terminal in Louisville, Kentucky, at 9th and Madison Streets, it employed two Louisville real estate men to find it a suitable location, and through their efforts attempted to buy two other locations, each some distance removed from the plaintiff's place of business, before purchasing the one at 9th and Madison Streets. The defendant made no request of either of these agents that its terminal property be located near the plaintiff's place of business and did not have that idea in mind when the property at 9th and Madison was eventually purchased. In soliciting business in Louisville, Kentucky, its representatives make no representation that the defendant company was connected with the plaintiff company.

The officers of the defendant company realized at its inception that the name "Yellow" had a trade value which was one reason the company began to use the name in 1924 and for the same reason continued

to use it after it started in business in Louisville, Kentucky, in 1939 through purchase of the Holsapple Truck Line, substituting its own trade name of Yellow Transit Company for the name of Holsapple Truck Line which it absorbed. On January 2, 1943, the defendant changed its corporate name from Yellow Cab Transit Company to Yellow Transit Company. Since the defendant began operations in Louisville, Kentucky, in 1939, some confusion has resulted between the plaintiff and the defendant in the handling of telephone calls and in the delivery of goods and mail to the respective parties.

After the defendant began to do business in Louisville, Ky., in September 1939, the plaintiff on October 24, 1939, wrote the defendant protesting against its use of the word "Yellow." Correspondence between the plaintiff and defendant followed in which the defendant claimed the right to continue the use of its trade name, and the plaintiff continued to protest against the defendant's use of the same. On December 28, 1939, the defendant advised plaintiff's attorney that it considered that it had the right to operate in Kentucky under the name of Yellow Transit Company and would do so unless litigation determined otherwise, and advised that it would expedite disposition of such litigation if instituted. The present action was filed in the Jefferson Circuit Court, Louisville, Ky., on May 16, 1941. The defendant removed the action to the U. S. District Court.

Jurisdiction exists in the United States District Court by reason of diversity of citizenship between the plaintiff and the defendant with the amount in controversy, exclusive of interest and costs, exceeding the sum of $3,000. Section 41(1) Title 28 U.S.C.A. The cause of action asserted by the plaintiff involves the question of unfair competition and common law trade-mark infringement and is controlled by the law of the State of Kentucky. Pecheur Lozenge Company v. National Candy Company, Inc., 315 U.S. 666, 62 S. Ct. 853, 86 L.Ed. 1103; Mishawaka Rubber & Woolen Manufacturing Co. v. S. S. Kresge Co., 6 Cir., 119 F.2d 316, 322.

"Unfair competition may be defined as passing off, or attempting to pass off, upon the public the goods or business of one man as being the goods or business of another. Any conduct tending to produce this effect constitutes unfair competition and may be enjoined. The means employed are wholly immaterial." U-Drive-It Co. v. Wright & Taylor, 270 Ky. 610, 614, 110 S.W.2d 449, 451; Newport Sand Bank Co. v. Monarch Sand Mining Co., 144 Ky. 7, 137 S.W. 784, 34 L.R.A., N.S., 1040; Crutcher & Starks v. Starks, 161 Ky. 690, 171 S.W. 433. To constitute unfair competition, the similarity of names or designs need not be such as would actually deceive persons seeing the two commodities side by side. The test is whether the alleged infringing design, taken as a whole, so far resembles the other as to be likely to be mistaken for it by the casual or unwary purchaser. It may be true that the cautious and discriminating purchaser is not likely to be so misled; but the protection accorded is not limited to the cautious and discriminating customer, but embraces the ordinary or unwary customer as well. "The law is not made for the protection of experts, but for the public— that vast multitude which includes the ignorant, the unthinking, and the credulous, who, in making purchases, do not stop to analyze, but are governed by appearances and general impressions." Hemmeter Cigar Co. v. Congress Cigar Co., 6 Cir., 118 F.2d 64, 70; Mishawaka Rubber & Woolen Manufacturing Co. v. S. S. Kresge Co., 6 Cir., 119 F.2d 316; Id., 316 U.S. 203, 205, 62 S.Ct. 1022, 86 L.Ed. 1381; Churchill Downs Distilling Co. v. Churchill Downs, Inc., 262 Ky. 567, 572, 90 S.W.2d 1041; Artiste Permanent Wave Company v. Hulsman, 271 Ky. 695, 702, 113 S.W.2d 55; Newport Sand Bank Co. v. Monarch Sand Mining Co., 144 Ky. 7, 12, 137 S.W. 784, 34 L.R.A.,N.S., 1040. It is not necessary to show that one has actually been misled; it is sufficient if the similarity is such as to likely produce deception. Newport Sand Bank Co. v. Monarch Sand Mining Co., 144 Ky. 7, 12, 137 S.W. 784, 34 L.R.A.,N.S., 1040; Churchill Downs Distilling Co. v. Churchill Downs, Inc., 262 Ky. 567, 572, 90 S.W.2d 1041; U-Drive-It Co. v. Wright & Taylor, 270 Ky. 610, 620, 110 S.W.2d 449; Kentucky Distilleries & Warehouse Co. v. Wathen, C.C., 110 F. 641, 645.

The owner of a trade-mark or trade name has a property right in the same which the Court will protect against an unwarranted use by another. It is not necessary to the maintenance of a charge of infringement to prove a distinct intent on the part of the infringer; it is the fact of infringement and the consequent inva-

sion of the good will and business of the owner that is controlling. The infringement will be restrained irrespective of the question of knowledge or intent on the part of the infringer. Hemmeter Cigar Co. v. Congress Cigar Co., 6 Cir., 118 F.2d 64, 71; Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., 6 Cir., 119 F.2d 316, 323; Id., 316 U.S. 203, 205, 62 S. Ct. 1022, 86 L.Ed. 1381; O. & W. Thum Co. v. Dickinson, 6 Cir., 245 F. 609, 615; De Voe Snuff Co. v. Wolff, 6 Cir., 206 F. 420, 424; Saxlehner v. Siegel-Cooper Co., 179 U.S. 42, 43, 21 S.Ct. 16, 45 L.Ed. 77; Churchill Downs Distilling Co. v. Churchill Downs, Inc., 262 Ky. 567, 574, 90 S.W. 2d 1041.

A word or a phrase that is generic or descriptive can not be appropriated by one as his exclusive property or for his use as a trademark, but is left free for public use. But where by reason of long use in combination with another word it has become identified with the business of the one so using it so as to identify to the public the origin of the product so described, the word or phrase may acquire a secondary meaning as the identifying mark of the particular article involved and as such will receive protection from the Court against unlawful use of a similar phrase by another. Although the word "Yellow" by itself is generic or descriptive, the phrases "Yellow Cab" and "Yellow Truck" in connection with their long continued use by the plaintiff in the operation of its business have acquired such a secondary meaning which will be protected. Newport Sand Bank Co. v. Monarch Sand Mining Co., 144 Ky. 7, 9, 10, 137 S.W. 784, 34 L.R.A.,N.S., 1040; U-Drive-It Co. v. Wright & Taylor, 270 Ky. 610, 616, 617, 110 S.W.2d 449; Hemmeter Cigar Co. v. Congress Cigar Co., 6 Cir., 118 F.2d 64, 69; Wisconsin Electric Co. v. Dumore, 6 Cir., 35 F.2d 555.

The law of unfair competition is not confined to cases of actual market competition. Where one passes off his goods or services as the goods or services of another, injury may result to the latter although he is not engaged in the manufacture or sale of like goods, and equity will intervene to protect the goodwill and business reputation of the latter from any injury liable to be caused thereby. Ac-

cordingly, the fact that the defendant's business of interstate trucking of freight does not compete with the plaintiff's business of local taxicab and transportation service is no bar to the relief herein sought. Churchill Downs Distilling Co. v. Churchill Downs, Inc., 262 Ky. 567, 571, 90 S.W.2d 1041; Vogue Co. v. Thompson-Hudson Co., 6 Cir., 300 F. 509; Wisconsin Electric Co. v. Dumore, 6 Cir., 35 F.2d 555. See cases therein cited.

Although the defendant may have originally acquired its name, color scheme and design in a legitimate way and had the right to so use it in the territory in which it was operating prior to engaging in business in Louisville, Kentucky, yet when it enters new territory it must enter it subject to whatever rights have previously been acquired there by others. The protection of a trade-mark is limited to appropriate trade territory. United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141; Hemmeter Cigar Co. v. Congress Cigar Co., 6 Cir., 118 F.2d 64, 71.

The delay of the plaintiff in filing the present action does not constitute laches such as to bar the relief sought herein. While delay in enforcing a right is an element of laches, it does not of itself constitute laches. Silence, or failure to act, in order to work estoppel must be bad faith silence or failure. Remaining passive does not ordinarily deprive one of his legal rights, unless in addition thereto he does some act to induce or encourage another to alter his condition. Delay does not bar one's rights where there are no circumstances indicating that plaintiff has abandoned its rights. The defense of laches is not available to one who voluntarily changes his position with full knowledge of plaintiff's rights. New York Underwriters Ins. Co. v. L. & N. R. Co., 285 Ky. 561, 568, 148 S.W.2d 710; Wisdom's Adm'r v. Sims, 284 Ky. 258, 144 S.W.2d 232; United States ex. Givens v. Work, Secretary, 56 App.D.C. 330, 13 F.2d 302; Mattison-Greenlee Service Corp. v. Culhane, 7 Cir., 103 F.2d 608, 610.

The plaintiff is entitled to injunctive relief against the defendant in accordance with the prayer of its petition. Plaintiff's counsel will draft and tender such judgment for entry.