KAY JEWELRY COMPANY, Appellant,

v.

GAY'S JEWELRY, Inc., Appellee.

Court of Appeals of Kentucky.

March 25, 1955.

.Morris & .Garlove, Charles W. Morris, Louisville, for appellant.

Joseph J. Kaplan, Homer D. Smith, Louisville, for appellee.

MONTGOMERY, Justice.

This is an action filed by appellant, Kay Jewelry Company, seeking to enjoin Gay's Jewelry, Inc., from using the name "Gay's. Jewelry" in connection with its business and from doing or continuing to do certain other acts alleged to be prejudicial to appellant. It appeals from an adverse judgment of the lower court.

The similarity of the names "Kay" and "Gay" is involved. Both parties are engaged in the retail jewelry business; In order to understand the use of these two names by the parties to this action, a statement of the facts is necessary.

Kay Jewelry Company is located at 620 South Fourth Street near Loew's Theater, 3½ blocks south from Jefferson Street in Louisville, Kentucky. It occupies a storeroom, one story in height, midway of the block.

Kay Jewelry Company is one of 92 stores operated by Kay Associates in 15 states and the District of Columbia, of which 76 operate under the name of "Kay". These stores have associated together to effect a greater economy in their business operations, but Kay Associates owns no stock in appellant Kay Jewelry Company, and appellant owns no stock in Kay Associates. Approximately $600,000 has been spent in advertising by Kay Associates. Appellant has operated in Louisville since 1931.

Appellee, Gay's Jewelry, Inc., was incorporated in May, 1952, as a Kentucky corporation. Its incorporators were: Morris Nussbaum—48 shares; Sam Nussbaum—1 share; and Sarah Fine—1 share. These incorporators are identical in name and interest with the incorporators of an organization formed in the state of Indiana in 1949, bearing the same name.

In September, 1946, Morris Nussbaum, then twenty-six years of age, started in business after his release from military service. He lived with his sister, Sarah Fine, mother of a small child named Gayle Fine. Nussbaum, at the time of this action. was still living with his sister, who was then divorced, and he is still unmarried. According to the proof, there is a great fondness existing between Morris Nussbaum and his niece, Gayle Fine. His sister has invested in their business.

Following his release from service in 1946, Morris Nussbaum, president and principal stockholder of appellee, purchased the going business, a retail jewelry store then being operated in Jeffersonville, Indiana, under the trade name of "Ray's Jewelry". The seller of this business also operated another jewelry store in New Albany, Indiana, under the same name. Because of the seller's insistence, inasmuch as he was continuing his New Albany business under the same name, Nussbaum changed the name of the business from Ray's Jewelry to Gay's Jewelry, the name "Gay" having been chosen because of the fondness of Morris Nussbaum for his niece, Gayle Fine, called "Gay" for short.

In the summer of 1949, Nussbaum opened another store in Charlestown, Indiana, and shortly thereafter organized an Indiana organization, "Gay's Jewelry, Inc.", which operated the two stores.

The Kentucky corporation of the same name, organized in May, 1952, was located at the corner of Fourth and Jefferson Streets in Louisville, Kentucky, in a storeroom on the lower floor of the Marion E. Taylor Building. Among the reasons given for opening the Louisville store by appellee were: the desirable location; a favorable ten-year lease; and the advantage of advertising and purchasing economies for the three stores.

There is a third retail jewelry store in Louisville at 410 South Fourth Street be-

tween Liberty and Walnut Streets, and between the business locations of appellant and appellee, which has been operated under the name of "May's" since April 3, 1928. It appears that after some discussion between "May's" and "Kay" in 1942 concerning the similarity of their names, a "live and let live" agreement was reached under which they have operated to the present time.

It was contended by appellee that Jeffersonville and Charlestown, Indiana, were a part of metropolitan Louisville, and that residents of Louisville traded with Gay's in Jeffersonville and Charlestown, and residents of these two communities traded with Louisville stores. Gay's had been advertising in Louisville papers since 1949. In a five-month period beginning before suit was filed and ending afterwards, appellee spent over $44,000 on advertising, while appellant spent over $35,000. Appellant claimed to have established the name of its business and built good will and profitable business on its advertising.

It was contended by appellant that the use of the name of "Gay" by appellee was unfair competition and was intended to deceive and confuse the buying public and calculated to cause the public to patronize appellee under the belief that appellee's business was connected with or a part of the business of appellant.

■ Unfair competition has been defined as passing off or attempting to pass off upon the public the goods or business of one man as being the goods or business of another. Newport Sand Bank Co. v. Monarch Sand Mining Co., 144 Ky. 7, 137 S.W. 784, 34 L.R.A.,N.S., 1040. In Nims' Unfair Competition and Trade-Marks, Volume 1, Section 1, Page 14, it is said:

"The most common form of unfair competition is the imitation of a trade name, trade symbol or device by a competitor. This may be a family name, or the name of a corporation, * * * or decoration of stores in which they are sold * * *."

Each party has sought to justify the use of the names involved as being legitimately based upon the name of a person in the family or business.

■■ As was said in the Newport Sand case, above, the intent to deceive is the gravamen of the offense in all cases of this character. It is necessary to show that there is an intent to deceive on the part of the offender, or that there is a likelihood that the buying public will be deceived or confused by conduct on the part of the alleged offender from which such intent may reasonably be inferred. Crutcher & Starks, v. Starks, 161 Ky. 690, 171 S.W. 433; Churchill Downs Distilling Co. v. Churchill Downs, Inc., 262 Ky. 567, 90 S.W.2d 1041. The relief sought is against the perpetration of a fraud calculated to produce unfair competition in business. Newport Sand Bank Co. v. Monarch Sand Mining Co., above.

■ The rule as to unfair competition involving the use of trade names is that the name used by the defendant when not the same as that of plaintiff must be so similar thereto that under all the circumstances of locality, business, etc., its use in itself is reasonably calculated to deceive the public and result in injury to plaintiff, or else it must be used fraudulently in such a way as to have this effect. Artiste Permanent Wave Co. v. Hulsman, 271 Ky. 695, 113 S.W. 55, and on second appeal, 277 Ky. 414, 126 S.W. 2d 850.

■ The test to be applied in such cases is set forth in Country Distillers Products, Inc., v. Samuels, Inc., 309 Ky. 262, 217 S.W.2d 216, 220, and it quoted from a Federal case, Stix, Baer & Fuller Dry Goods Co. v. American Piano Co., 8 Cir., 211 F. 271, 274, as follows:

" * * * 'It is now settled beyond controversy that a family surname is incapable of exclusive appropriation in trade. The right of every man to use his own name in his business was declared in the law before the modern doctrine of unfair trade competition

had arisen. It is part of the law of trade-mark. * * * If, however, the name has previously become well known in trade, the second comer uses it subject to three important restrictions: (1) He may not affirmatively do anything to cause the public to believe that his article is made by the first manufacturer. (2) He must exercise reasonable care to prevent the public from so believing. (3) He must exercise reasonable care to prevent the public from believing that he is the successor in business of the first manufacturer. This duty to warn, however, must not be pressed so far as to make it impracticable for the second comer to use his name in trade.' To the same effect is Fletcher On Corporations, Permanent Edition, Volume 6, p. 45."

The right to use one's Christian name in business has been upheld on the same principle as the right to use one's family name. In Yale & Towne Mfg. Co. v. Yale's Hardware Store, 25 T.M.Rep. 526, the defendant, Yale Rose, insisted that he had a right to name his business "Yale's Hardware Store" since he was known in the neighborhood of his shop as "Yale". The following comment on this case is made in Derenberg's Trade-Mark Protection and Unfair Trading, Page 377:

"Since, in the court's opinion, the use of defendant's name, Yale, could not be reasonably looked upon as constituting a threat or menace to the good will of the plaintiff's business, and since there was no dishonest purpose or ulterior motive on defendant's part, the plaintiff was denied relief."

 It would seem that the manner or way in which the particular name is used is the more important consideration rather than its origin, whether from first or last names of the owner of the business, or someone connected with his family or the business. It is conceivable that businesses of same or similar names could be operated without deceiving or confusing the public and without loss to each business. Therefore, the greater consideration should be given to the intent with which the name is used, the manner in which it is used, and whether the public is deceived or confused by the use of the name to the detriment of the business offended. These are all matters of proof. Again quoting from the Newport Sand case, above [144 Ky. 7, 137 S.W. 786]:

"* * * This question of similarity or resemblance between two trade-names is a question of fact that must be determined by the evidence in each particular case, and it is impossible to adopt any uniform rule that would be applicable alike to all cases."

Appellant complains that it should not have been compelled to bear the burden of proof of actual deception despite the allegation in its petition, which is as follows:

"* * * that the maintenance of the aforesaid tradename by the defendant in connection with the operation of a retail jewelry store in Louisville, Kentucky, was and is intended by the defendant to deceive the public into believing the defendant is engaged in, or a part of, the business operated by plaintiff and to confuse the buying public; that the same is calculated to cause the public to patronize the defendant under such belief."

 So far as the burden of proof is concerned, there is no perceivable reason why any distinction should be made between cases involving trade-marks and those concerning trade names. When the user of a trade name establishes a prima facie case, a defendant who uses a similar name has the burden of justifying his use. Nims' Unfair Competition and Trade-Marks, Volume 2, Section 336, Page 1057.

The trial court, after hearing oral testimony without a jury, made the following findings of fact: (1) appellee originally adopted its name in a legitimate and fair way; (2) the original adoption of its name was not done for the purpose of unfair competition with appellant; (3) confusion between the names was not sufficiently es-

tablished; (4) appellee's advertisements and signs were not designed to, nor did they, imitate or simulate appellant's; (5) appellee did not engage in unfair competition entitling appellant to relief or attempt to deceive the public by employing individuals who at the time of employment or prior thereto had worked for appellant; (6) appellee's agents and employees did not attempt to induce the public or prospective customers to believe that the two businesses constituted one enterprise, or otherwise deceive the public; (7) there had been no confusion to the buying public because of the operation of business by "May's" on Fourth Street in Louisville insofar as appellant was concerned; and (8) the founder of appellee had purchased "Ray's Jewelry", a retail jewelry store then operated in Jeffersonville, Indiana, in September, 1949; that the name of this business was changed to "Gay's" because the seller operated another jewelry store in New Albany, Indiana, under the same trade name; and in 1949, the owners of appellee opened another store in Charlestown, Indiana, under the name of "Gay's".

CR 52.01 provides in part as follows:

"In all actions tried upon the facts without a jury * * * the court shall find the facts specifically and state separately its conclusions of law thereon and direct the entry of the appropriate judgment; * * *. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. * * *"

Also, see comment and discussion in Clay's Kentucky Civil Rules, Page 465, Paragraph 6, Review, and the cases cited thereunder.

■ In view of this Rule, upon consideration of the record, we are unable to say that the trial court's findings of fact are erroneous.

Judgment affirmed.