**Joe JACKSON et al., Appellants,**

**v.**

**Millard STEPHENS et al., Appellees.**

Court of Appeals of Kentucky.

June 11, 1965.

Joe S. Feather, G. G. Teague, Jr., Williamsburg, for appellants.

Grant Knuckles, James S. Wilson, Pineville, for appellees.

HILL, Judge.

The question on this appeal is whether or not the trade name of the appellees taken from a geographical location has been violated.

In 1955, appellees, Millard Stephens and his brother, Morris Stephens, began the construction of a motel in the vicinity of Cumberland Falls State Park. They named the business FALLS MOTEL & RESTAURANT, but did not register the name in the office of the county court clerk until May 9, 1962. The original construction included fifteen motel units and a restaurant on Highway 90 in McCreary County about two miles west of Cumberland Falls. A neon sign bearing the name of FALLS MOTEL was erected in front of this business; and in 1960 thirty more units were added, the restaurant enlarged and a swimming pool constructed at an additional cost of about $125,000. Early in 1963, appellees started the construction of twenty more units, cottage stye, which were completed in 1963, all at a total cost of approximately $300,000. Considerable advertising of their business was done by the appellees by postcard and by large highway billboards, as well as other means of advertising, at a cost of $5,000.

Appellants, Mr. and Mrs. Joe Jackson, in the spring of 1962, commenced the construction of another motel on land which overlooks the historical Cumberland Falls. Appellants contend they plan to have a trail leading to the point where the falls of the Cumberland River can be viewed by their patrons. They named their place FALLS VIEW MOTEL.

On June 8, 1962, appellees brought this action seeking to enjoin the appellants from using the word FALLS in connection with their intended business which was more than two months before the appellants opened their place of business. By amended pleadings, after the issues were first completed, appellants sought to change the name of their business to FALLS VIEW MOTEL LODGE. This effort was also questioned by the appellees. An order was entered on July 17, 1963, by the trial court in which it concluded that by the use of the name FALLS MOTEL & RESTAURANT, the words had acquired a secondary meaning, but stated that the evidence of confusion and deception between the two

names was not sufficient at that time to justify injunctive relief but retained the case on the docket for further proof by the appellees on this question. Thereafter appellees offered further proof and on June 29, 1963, the trial court found, as a matter of fact, confusion and deception resulted from the similarity of names and enjoined the appellants from the use of the words FALLS MOTEL in their trade name. It also found that by the use of the name FALLS MOTEL by the appellees over a period of time the words have acquired a secondary meaning; and that the use of those words by appellants constituted an unfair business competition against the appellees. The order permanently enjoined the appellants from using the name FALLS VIEW MOTEL LODGE. From that judgment this appeal is prosecuted.

Appellants contend that the use of the word FALLS is merely indicative of a geographical location and such a name is common property of all the people, the exclusive right of none, and cannot be exclusively appropriated by anyone; that any other conclusion would amount to encouragement of monopoly. In support of this theory, appellants cite Newport Sand Bank Co. v. Monarch Sand Mining Company, 144 Ky. 7, 137 S.W. 784, 34 L.R.A.,N.S., 1040; 87 C.J.S. Trade-Marks, Trade-Names, and Unfair Competition § 109, p. 376; 52 Am.Jur. 548; Burnside Veneer Corp. v. New Burnside Veneer Company, Ky., 247 S.W.2d 524.

Appellants assert that Wyatt, et al. v. Mammoth Cave Development Company, 6 Cir., 26 F.2d 322 is so decisive of the questions involved in this case that they are willing to base their rights thereon on this appeal.

Conversely, it is equally well argued by appellees that by long use and establishment in a trade name, words having a geographical significance may acquire a "secondary meaning" and become the subject of equitable protection under rules against unfair competition. This theory is founded on the reasoning that it is unfair competition and unjust to allow one person to "pass off" goods or service as being the goods or services of another.

First, we should examine Wyatt v. Mammoth Cave Development Company, supra, since appellants are admittedly willing to rely solely on the authority of that case. The Wyatt case involved an effort of the owners of the original Mammoth Cave properties to enjoin the owners of adjoining lands from opening, using and advertising their property as a part of the "Mammoth Cave" system of caves. It was proven in that case that the designation "Mammoth Cave" included a vast territory far outside the surface rights of the original owner; that for nearly a century "Mammoth Cave" was world famous as a term to designate this vast cavernous area, some of which was historically admitted by the owner to extend beyond his boundaries. The court decided in Wyatt that the name "Mammoth Cave" was the property of all persons owning a part of this cavernous area. Even so, the court recognized the property rights in the trade name of the original owner of the first discovered entrance by "enjoining the defendants, their officers and agents, from any verbal description or oral solicitation of trade or business, or exhibiting, circulating, distributing circulars, folders, signboards, handbills, etc., or other printed, written or descriptive matter wherein 'Mammoth Cave' is used, except that, wherever the phrase 'Mammoth Cave' or 'New Entrance to Mammoth Cave' occurs there shall be placed in immediate juxtaposition to these words in type or lettering of the same size, style, and legibility, and equally prominent, or in case of verbal or oral description or solicitation, a full verbal explanation to the same effect, the phrase 'We do not show any part of the cave which prior to 1907 was generally known to the public as Mammoth Cave; that portion of the cave can be seen only through the old entrance.' The court further ordered that all existing signboards should be removed or changed to conform with the above requirement, and that in all oral solicitations

the defendants should fully and fairly explain that the parts of the cave shown through the new entrance did not include the parts of the cave being shown through the old entrance.

Thus, it is clear in the Wyatt case that while the federal court recognized the common property right in the geographic name "Mammoth Cave," it nevertheless found the original owner entitled to "reasonable protection" as to the features lying within his boundary, both on the idea the long use of the name by the original owner had resulted in its acquiring a secondary meaning and because of bad faith, unfair competition and objectionable methods by the owners of the newly opened cave.

The Wyatt case differs from the case at bar, in that, the name sought to be used in the Wyatt case was in the name of the property itself, like the name of a coal seam such as the Elkhorn seam, or seams. All persons owning a part of that seam have a right to use its name. The seam is pretty well uniform in chemical composition and suitability for various uses and the persons owning a part of it have an inherent right to so designate their product.

Wyatt owned a part of the Mammoth Cave system itself. In the present case, appellants owned no part of "Cumberland Falls" itself. The trade name was selected because of its association with and proximity to the famous "Falls." In this respect, the rule should be the same as in the case of any other trade name. First come, first served.

It will aid us in considering this case further to point out here that the trial court found, as a matter of fact, that serious deception and confusion resulted from the use of the name adopted by appellants. The record fully supports this finding.

Equity should and will protect the owner of an established business from unfair competition by a newcomer's use of a business name so deceptively similar as to infringe upon the good will and reputation of his business even though such name includes a geographic term. In 87 C.J.S. Trade-Marks, Trade-Names, and Unfair Competition § 90, page 319, it is said:

"Words or names which have a primary meaning of their own, such as words descriptive of the goods, or the place where they are made, or the name of the maker, and which are not capable of exclusive appropriation as a trade-mark, may nevertheless by long use in connection with the goods or business of a particular trader come to be understood by the public as designating the goods or business of that particular trader. Such words have both a primary and a secondary meaning. In their primary descriptive sense, they are publici juris, and all the world may use them, but they must be used in such a way as not falsely to convey the secondary meaning, since this would constitute unfair competition as tending directly to pass off the goods or business of one man as and for that of another."

Also in 87 C.J.S. under Trade-Marks, Trade-Names, and Unfair Competition § 105 page 357, this statement of law is announced:

"Where geographical names have acquired a secondary meaning, a deceptive use of such names by others in connection with similar goods or business constitutes unfair competition, and will be enjoined. * * *"

See also American Products Co. v. American Products Co., (D.C.Mich.) 42 F.2d 488; U-Drive-It Co. v. Wright & Taylor, 270 Ky. 610, 110 S.W.2d 449, 454; Indian Territory Oil & Gas Co. v. Indian Territory Illuminating Oil Co., (CCA 10) 95 F.2d 711.

This court, in Newport Sand Bank Co. v. Monarch Sand Mining Company, supra, said:

"* * * the use of descriptive terms and generic names is limited to a truth-

ful use, and, where such names or terms have become identified in the minds of the public with one's business, the use of such terms and words by another in a manner calculated to deceive the public by passing off his goods as and for the goods of another, cannot be justified. This rule has been extended to the extent that one may not even use his own name in connection with or as a part of a business or trade name so as to pirate upon the good will or reputation of a business rival by inducing the public to believe that his goods are those of his rival."

■ The term "unfair competition," when used in connection with a trade name or trademark, means simply "passing off or attempting to pass off upon the public the goods or business of one man as being the goods or business of another." This Court, as early as 1887, in Metcalfe v. Brand, 86 Ky. 331, 5 S.W. 773, made the following able and bullseye comment:

" * * * and where the manufacturer has given it a geographic name, which he was the first to use in connection with the article, it seems to us that it may from long use in such connection acquire a *secondary* meaning, and, instead of designating the place where the article is made, indicate its origin, or that it is the product of a particular manufacturer or made according to his method. When this is the case it becomes, in our opinion, a valid trademark. It then designates the *particular goods of this one man*. The public so understand it, and this is the aim and end of a trade-mark. The name is no longer used to indicate the place where they are made, but becomes the name of his goods. It gives notice that he is the maker. It, by reason of first and continued use and association with the name of the article made or sold by him, acquires an understood reference to him. It is the trade denomination of his [particular] article. It acquired a secondary meaning in connection with a particular manufacturer." (Our emphasis).

This Court has continued to follow this rule in Acy v. Whaley, 281 Ky. 400, 136 S.W.2d 575; Kay Jewelry Co. v. Gay's Jewelry, Inc., Ky., 277 S.W.2d 30; and many other cases. In Grocers Baking Co. v. Stigler, 6 Cir., 132 F.2d 498, it was said:

"Under Kentucky law a trade name does not have to be identical with another in order to justify a court in enjoining its use. It is sufficient if it is so similar to the earlier adopted trademark as to make it likely that unsuspecting persons would be led to believe that it was the same."

■ Places of business, such as those of the parties in this case, depend to a large extent on advertising along the highways. The traveling public, usually traveling at top speed, seldom stops to read a billboard; it just takes a glance at the name and, if possible, the mileage thereto. Little similarity of billboards may result in confusion and deception. Under such circumstances, no newcomer should be allowed to "pirate" the name, good will, business or services of another often acquired through pioneering, privation and hardship. Courts should be alert and unhesitating in preventing such piracy.

We think the rights of appellees in their trade name have been violated, and that the trial court correctly so determined.

The judgment appealed from is, therefore, affirmed.