**COVINGTON INN CORPORATION, d/b/a White House Motor Inn, Appellant,**

v.

**WHITE HORSE TAVERN, INC., Appellee.**

Court of Appeals of Kentucky.

June 27, 1969.

Rehearing Denied Oct. 24, 1969.

Rodney S. Bryson, Ware, Bryson, Nolan & West, Covington, William J. Walsh, Lindhorst & Dreidame, Cincinnati, Ohio, for appellant.

John J. O'Hara, O'Hara, Ruberg & Cetrulo, Covington, for appellee.

CLAY, Commissioner.

This is an appeal from a judgment enjoining appellant defendant from using a *trade name* which appellee plaintiff alleged constituted "unfair competition". There is no dispute about the essential facts, but it is contended the Chancellor erred in his legal conclusion and abused his discretion in granting the injunction.

The plaintiff is WHITE HORSE TAVERN, INC., which operates in a single building a cocktail lounge and restaurant on the Dixie Highway in Kenton County.

It has been engaged in this business for many years and has acquired a good reputation. The defendant is a New York Corporation authorized to do business in Kentucky as the "Covington Inn Corporation". It is a subsidiary of "Realty Equities" of New York. The latter corporation has other subsidiaries in other states incorporated as "WHITE HOUSE INNS, INC." It has other subsidiaries with a different corporate name but which do business as "WHITE HOUSE INNS". These various corporations, including the defendant, are engaged in the motel business, with restaurant facilities.

Shortly before this suit was brought defendant purchased what formerly had been the Lamplighter Motor Inn on Dixie Highway, located 1.3 miles from the WHITE HORSE TAVERN, on the same side of the thoroughfare. It began conducting business there under the assumed name of WHITE HOUSE MOTOR INN. This motel complex contains 220 rooms, painted white. There is a separate brick building containing a cocktail lounge and a dining room. (The names above the respective doorways are "President's Lounge" and "Senate Dining Room". There is also a separate dining room bearing the name Hofbrau Haus Restaurant, with a lamp above the sign.) The parties' establishments are in different cities, plaintiff's being located in Park Hills and defendant's in Ft. Mitchell. The respective addresses are, 1501 Dixie Highway and 1939 Dixie Highway.

There is no similarity between plaintiff's building and defendant's buildings. There is no similarity between the signs of plaintiff and the signs of defendant. Plaintiff's entrance sign, reading WHITE HORSE TAVERN, is in distinctive script and has mounted above, on the marquee, a life-sized white horse. Defendant's principal sign on Dixie Highway, reading WHITE HOUSE MOTOR INN, has a large lamp above it. Painted on a building facing Dixie Highway is a sign reading WHITE HOUSE INN. The only similarity in-

volved in this lawsuit is the likeness of the words WHITE HORSE and WHITE HOUSE.

This similarity has caused some confusion. The manager of the WHITE HORSE TAVERN testified about misdelivered mail; that he had received deliveries of matches and glasses intended for the WHITE HOUSE INN; that the WHITE HORSE TAVERN had received long-distance telephone calls for persons who were guests at the WHITE HOUSE INN; and that persons had come to the WHITE HORSE TAVERN inquiring as to the location of "their rooms".

A mail carrier testified that Covington is the proper post office for both WHITE HORSE TAVERN and WHITE HOUSE INN, though each is in a different incorporated area; that the WHITE HORSE TAVERN is located within his route, and the WHITE HOUSE INN is not; that notwithstanding, it was customary for him to receive 10 or 11 pieces of mail, each day, addressed to the WHITE HOUSE INN. This witness, however, testified that there is almost invariably confusion when a new place of business opens because of the number of people involved in handling mail, and that after a time the confusion subsides.

Another witness testified about the misdelivery of a 100-pound drum of hand soap.

The bookkeeper for the WHITE HORSE TAVERN testified about misdelivered invoices and stated that the confusion had been increasing rather than decreasing. Several other witnesses testified that in their opinion the names were "deceptively similar".[1]

■ Both parties (as did the Chancellor) assume that KRS 271.045(2) sets forth the law governing this controversy. That statute is a part of the corporation law of the Commonwealth, and subsection (2) provides that *a corporate name* shall not be the same as, "nor deceptively similar to" the name of other corporations. Subsection (4) authorizes an equity action by any person interested or affected to enjoin the doing of business under a name assumed in violation of this statute. Here of course we do not have a similar *corporate* name. Perhaps the statute could be reasonably construed to extend to an *assumed name* of a corporation. In any event the policy of the legislature expressed in subsection (2) conforms to the common law of "unfair competition" as applied in Kentucky, so the plaintiff need not rely on a statutory right.

The common law doctrine of unfair competition has long been recognized and its coverage has been expanded to meet many varying types of business conditions. A fair discussion of the principles involved appears thus in 52 Am.Jur., Trade-marks, Trade-names, Etc., section 86 (page 564):

"Unfair competition, as a justiciable wrong under the common law, is a limited concept, although the scope of the doctrine, which has in recent years been expanded in some jurisdictions in varying degrees, cannot be precisely defined. *It is a species of fraud or deceit.* A universally recognized, and the most common, form or mode of unfair competition is the simulation by one person of the name, symbols, or devices employed by a business rival, so as to induce the purchase of his goods under a false impression as to their origin or ownership and thus secure for himself benefits properly belonging to his competitor.

"As stated by some authorities, the essence of the wrong is the sale of one's own goods for those of another person, and it has sometimes been declared that nothing less than conduct tending to pass or 'palm' off one's own merchandise, services, or business as that or those of another will constitute unfair competition. According to other authorities, however, the doctrine of unfair competition is not

---

1. The competency of this evidence may be questionable since the deceptive similarity of the names was one of the basic issues the Chancellor had to determine.

limited to such passing off of one's goods, services, or business for those or that of another, but extends to others acts done or practices employed *for the purpose of pirating the trade of a competitor.* It has been held to apply to misappropriation as well as misrepresentation, to the selling of another's goods as one's own— to misappropration of what equitably belongs to a competitor. Also, the doctrine has been extended in many cases, especially the more recent, so as to afford protection and relief against *the unjust appropriation of, or injury to, the good will or business reputation of another, even though he is not a competitor."* (Emphasis added.)

Our Kentucky cases hereinafter cited recognize the above principles.

Our latest case of Jackson v. Stephens, Ky., 391 S.W.2d 702, page 705, contained the following observation:

"Equity should and will protect the owner of an established business from unfair competition by a newcomer's use of a business name so deceptively similar as to infringe upon the good will and reputation of his business even though such name includes a geographic term."

In the myriad of decisions in Kentucky and elsewhere on this subject, the decisions are consistently anchored in the terms *unfair competition*. While the opposing parties need not be engaged in the same kind of business, there must be some *competitive* aspect and the defendant must be acting *unfairly* in a manner which invades the plaintiff's protected rights. The classic case of course is when the defendant uses a name or symbol to identify products for the obvious purpose of capitalizing on the good will created by a competitor in the same line of business. Such were the cases of Avery & Sons v. Meikle & Co., 81 Ky. 73, 4 Ky.Law Rep. 759; E. H. Taylor, Jr. & Sons Co. v. Taylor, 124 Ky. 173, 85 S.W. 1085, 27 Ky.Law Rep. 625; Newport Sand Bank Co. v. Monarch Sand

Mining Co., 144 Ky. 7, 137 S.W. 784, 34 L.R.A.,N.S., 1040. The selling of the same kind of services is in the same category. Jackson v. Stephens, Ky., 391 S.W. 2d 702. Even when the parties are not in the same line of business, one party may not use the name of another to derive a profit by capitalizing on the reputation and good will of the former. Churchill Downs Distilling Co. v. Churchill Downs, 262 Ky. 567, 90 S.W.2d 1041.

Mayfield Milling Co. v. Covington Bros. & Co., 212 Ky. 262, 278 S.W. 562, 563, involved an alleged confusing trade-name on a sack of flour. The plaintiff had established the name "Jersey Cream". The defendant used the name "Trenton Cream". The packages were different. The plaintiff's petition was dismissed on the ground there was no intention to deceive and that no "ordinarily sensible person" could be deceived by the similarity.

In Louisville Taxicab & Transfer Co. v. Yellow Cab T. Co., D.C., 53 F.Supp. 272, the plaintiff claimed a property right in the name "Yellow Cab". The defendant was a foreign corporation by the name of "Yellow Cab Transit Company". It operated only as a common carrier of freight but it solicited business in Louisville as the "Yellow Transit Company". The plaintiff was given injunctive relief basically on the ground that the defendant was capitalizing on the plaintiff's good will.

In White Tower System, Inc. v. White Castle System, Etc., 6 Cir., 90 F.2d 67, the defendant had established the trade-name "White Castle" for its hamburger institutions in Detroit. The plaintiff moved into the same area in the same business with the name "White Tower". The court granted the defendant an injunction on the ground that it was obvious design of the plaintiff to capitalize on the reputation of the defendant.

In Stork Restaurant, Inc. v. Sahati, 9 Cir., 166 F.2d 348, the plaintiff operated the famous New York restaurant "The

Stork Club". It was granted an injunction against the use of *that same name* by a small bar, tavern and cocktail lounge in San Francisco. While the situation there involved was not at all similar to the one before us, that opinion is referred to because of the thorough analysis of the factors involved. Among other things, the court said that the "confusion of source" may result in "dilution of good will".

Perhaps the closest case involving a factual situation similar to the one before us is Kay Jewelry Company v. Gay's Jewelry, Ky., 277 S.W.2d 30. In that case Kay Jewelry Company had operated a store on Fourth Street in the City of Louisville since 1931. In 1952 GAY'S JEWELRY, INC., opened the same sort of business in a store about four blocks away on the same street. We affirmed a judgment of the Chancellor refusing to grant KAY an injunction. In reaching this conclusion it was said (page 33 of 277 S.W.2d):

> "* * *, the intent to deceive is the gravamen of the offense in all cases of this character."

No such intention was established. The opinion goes on to say (page 34 of 277 S.W.2d):

> "Therefore, the greater consideration should be given to the intent with which the name is used, the manner in which it is used, and whether the public is deceived or confused by the use of the name to the detriment of the business offended."

■ The foregoing authorities collectively impel the conclusion that unfair competition consists of either (1) *injuring* the plaintiff by taking his business or impairing his good will, or (2) *unfairly profiting* by the use of the plaintiff's name, or a similar one, in exploiting his good will. Underlying the whole theory is the matter of actual or intended deception of the public for business reasons. See Newport Sand Bank Co. v. Monarch Sand Mining Company, 144 Ky. 7, 137 S.W. 784, 34 L.R.A.,N.S., 1040.

Some authorities in effect presume an intent to deceive if actual deception, for business purposes, is established. But in none of the cases to which our attention has been called, or of which we are aware, have the courts presumed this essential element and granted equitable relief in the absence of a substantial showing that the defendant's conduct either (1) injured the plaintiff (by reason of the loss of business or impairment of good will) or (2) unjustly enriched the defendant (by reason of the exploitation of the plaintiff's good will).

■ Although plaintiff argues to the contrary, the record does not support a finding, and the Chancellor did not find, that the defendant intended any deception. As in the Gay case discussed above, the WHITE HOUSE name had been used in good faith in other states, and the officer who supervised the management of the WHITE HOUSE INN testified he had never heard of the WHITE HORSE TAVERN until this suit was filed. There was no evidence that defendant was causing a loss of business to plaintiff nor was there evidence that defendant was exploiting or impairing the good will of plaintiff.

■ What we have here is a similarity of names which initially caused the Post Office some confusion and has confused some members of the public. Plaintiff has suffered inconvenience (and apparently so has defendant). That is not enough to support the claim of unfair competition.

■ It is true the Chancellor found that the names were "deceptively similar", but as we said in our latest case on the subject, Jackson v. Stephens, Ky., 391 S.W. 2d 702, the newcomer's use of a business name must be "so deceptively similar as to infringe upon the good will and reputation" of the business. The record simply does

support such a conclusion. Defendant has not been shown to have committed a tort against the plaintiff which would justify the equitable relief granted.

The judgment is reversed.

MONTGOMERY, C. J., and EDWARD P. HILL, MILLIKEN, OSBORNE, PALMORE and REED, JJ., concur.

STEINFELD, J., dissents.